30    587
101a   562

FARWELL *et al.,* Plaintiffs in Error, v. PRICE *et al.,* Defendants in Error.

1. A. at St. Louis shipped flour consigned to B. in Boston. C. at New Orleans, to whom said flour was shipped to be forwarded by him to B. in Boston, wrongfully converted the same. *Held,* in a suit brought by B. against C., that the measure of damages was the value of the flour at the place of destination.

### *Error to St. Louis Court of Common Pleas.*

This was an action to recover damages for the wrongful conversion by defendants of two thousand and forty-seven barrels of flour belonging to plaintiffs. The cause was tried by the court without a jury, and the court, at the request of both parties, found a special verdict. The facts as found by the court in this special verdict were substantially as follows: About August 28, 1857, Merritt, Risley & Co., merchants of St. Louis, purchased a lot of flour containing two thousand and ninety-five barrels, and shipped the same to their factors, the plaintiffs, Farwell & Co., at Boston, via New Orleans, Louisiana, consigned to the care of defendants, Price, Converse & Smith. From the bills of lading taken by Merritt, Risley & Co. it appears that the flour was shipped to Price, Converse & Smith, at New Orleans, to be forwarded by them to the plaintiffs, the consignees, at Boston. At the

time of purchasing said flour, Merritt, Risley & Co. had authority to draw on the plaintiffs against or upon actual shipments, and drew on them, on account of the above shipment, four bills of exchange amounting to $10,344, which were all accepted by the plaintiffs and have since been paid. There were no other bills drawn on account of this flour and accepted by any one. The flour went forward as far as New Orleans, arriving there early in September. Defendants received and forwarded forty-eight barrels thereof, but refused to receive and forward the residue, converting the whole to their own use. The manner of conversion was by causing the flour to be seized and attached at the suit of themselves as the property of Merritt, Risley & Co. The special verdict then proceeds to set forth the cost of the flour at St. Louis, its value at New Orleans at the time of the conversion, and its value in Boston if it had gone forward according to the bills of lading. Its value was less at New Orleans at the time of the conversion than it cost at St. Louis, or its value in Boston less the charges of transportation, fifty cents per barrel. At the time of the seizure of the flour by the defendants, they were creditors of Merritt, Risley & Co. in the sum of $2,652.13. At the same time defendants were under acceptance for the accommodation of Merrit, Risley & Co. in the sum of about $24,000, not then due. All of this indebtedness was on general account, and defendants had not advanced or accepted for Merritt, Risley & Co. on account of this flour or any part thereof. An agreement had been previously made between Merritt, Risley & Co. and defendants, by virtue of which Merritt, Risley & Co. gave to the defendants real estate security in the sum of $25,000 to secure them against loss by reason of advances or acceptances for Merritt, Risley & Co.

The court declared the law " to be that the plaintiffs are entitled to recover of the said defendants damages according to the value of the flour by defendants converted as aforesaid at New Orleans at the time of said conversion, with interest thereon from the time of conversion ; and that the

plaintiffs are not entitled to the Boston value of said flour, less the charges of conveying it thither, with interest as claimed by plaintiffs' counsel." The court refused to give, as requested by plaintiffs, the value of the flour at Boston as the same would have been at Boston had it gone forward without any interruption, less the charges of conveying it thither.

The court refused the following instructions asked by the defendants: "1. If the jury find from the evidence that Merritt, Risley & Co., of St. Louis, shipped the flour in question to the defendants, to be by them forwarded to the plaintiffs at Boston, to be sold by the plaintiffs on account of the shippers; that said property was attached in New Orleans by the defendants for a debt due them by Merritt, Risley & Co., then plaintiffs can not recover.  2. If the jury find from the evidence that Merritt, Risley & Co., of St. Louis, purchased the flour in question on their own account, and shipped the same to the defendants at New Orleans, to be forwarded to plaintiffs at Boston and there sold on account of shippers; that said defendants refused to receive the said shipment, but caused the same to be attached for a debt due them from Merritt, Risley & Co., then the plaintiffs can not recover.  3. If the jury find from the evidence that Merritt, Risley & Co. purchased the flour in question and shipped the same to the plaintiffs at Boston to be sold on account of the shippers, then the plaintiffs can not recover in this action.  4. If the jury find from the evidence that Merritt, Risley & Co. purchased the flour in question and shipped the same to the plaintiffs at Boston to be sold on account of the shippers, then the plaintiffs can not recover in this action, unless they further prove that they purchased said flour before the institution of this suit.  The court refuses to give this instruction and declares that if the shippers (M., R. & Co.) were authorized to draw on plaintiffs against said shipments, and did so draw, and plaintiffs accepted and paid said drafts, that these facts gave them such title to the property as to authorize them to maintain this suit.  5. If the jury find from the

evidence that Merritt, Risley & Co. purchased the flour in question, and shipped the same consigned to defendants at New Orleans, to be forwarded by said defendants to plaintiffs at Boston, to be sold on account of Merritt, Risley & Co., then the plaintiffs can not recover. 6. If the jury find from the evidence that Merritt, Risley & Co., of St. Louis, purchased the flour in question on their own account, and shipped the same consigned to defendants at New Orleans, to be forwarded by said defendants to the plaintiffs at Boston, to be sold on account of the said Merritt, Risley & Co.; that said Merritt, Risley & Co., when said flour arrived at New Orleans, were indebted to said defendants; that said flour never came to the possession of said defendants until after the same was attached; that said flour was afterwards sold by virtue of said attachment at the city of New Orleans, then the plaintiffs can not recover in this suit. 7. Upon the evidence in this case the plaintiffs are not entitled to recover."

The court gave judgment for the plaintiffs for $9,540.13, in accordance with its ruling as above set forth. Both parties sued out writs of error.

*Gantt*, for Farwell & Co.

I. As to whether plaintiffs are entitled to any judgment, see Holbrook v. Wright, 24 Wend. 169; Nesmith v. Dying, Bleaching and Calendering Co. 1 Court. 130; Gibson v. Stevens, 8 How. 384; Grove v. Brien, 8 How. 429.

II. The court declared an erroneous measure of damages. The property was wrongfully converted at New Orleans. It was confided to defendants' care as commission merchants. The plaintiffs at Boston were entitled to receive it there. Of this right they were deprived by the wrongful act of defendants. The court should have given the value of the flour at Boston, less the cost of transportation. (The Joshua Barker, 1 Abbott's Adm'y R. 215; Watkinson v. Laughton, 8 Johns. 213; Bracket v. McNair, 14 Johns. 170; 14 Johns. 273; Amory v. McGregor, 15 Johns. 24; 2 Barn. & Ald. 932; Gillingham v. Dempsey, 12 S. & R. 188.)

*Knox & Kellogg*, for Price, Converse & Co.

I. The mere drawing of bills of exchange by shippers of merchandise on a remote consignee does not pass the title to the merchandise so shipped to such consignee. Farwell & Co. had not instructed Merritt, Risley & Co. to purchase flour at St. Louis; nor were they under any agreement to accept drafts drawn on them. The most that the record shows is that F. & Co. had accepted bills drawn by M., R. & Co. before the shipment of the flour. It is asking too much of sister states that they should prevent their citizens from attaching the property shipped by nonresident debtors while in transit through the state in which the creditor resides. Our own courts would not hesitate to hold such property for the benefit of resident creditors. (26 Mo. 423.) If the defendants be liable at all, the measure of damages as determined by the court is correct. (Sedgw. on Dam. 480–1, 478–9, 531–4.)

NAPTON, Judge, delivered the opinion of the court.

Where property is in a state of transportation from one point to another, and a wrongful conversion of it occurs at some intermediate point, the question arises, in estimating the damages sustained by the owner, as to the point where the value of the property is to be taken, whether at the place of conversion, the place of delivery, or the place from which the goods were forwarded. Where the wrongdoer is the person employed as the agent of transportation, there seems to be very little doubt that the value of the goods at the place of the conversion is no criterion whatever for estimating the damages to which the owner is entitled. In such cases there has been some doubt expressed as to whether the place of embarkation or the point of destination should govern in the estimate of the owner's loss; but the rule, which establishes the point of delivery as the place where the value is to be taken, seems to meet with more general support. (Gillingham and others v. Dempsey, 12 Serg. & R. 183; The Joshua

Barker, 1 Abbott's Adm'y R. 218.) And where the wrong-doer is a mere stranger, a trespasser, it is not easy to see upon what ground he can insist that the value of the property at the place where the conversion occurs shall be the measure of damages to which the owner is entitled. Such a rule would, in effect, force the owner to dispose of his property in a market not of his own selection, and one where, per chance, the property might be valueless. A slave is sent by his owner in Missouri to Kentucky for the purpose of being there sold, and he is wrongfully taken from the possession of the owner's agent whilst in Illinois, on his way to Kentucky. Must the value of the slave in Illinois be the measure of damages to which the owner is entitled in his action against the wrongdoer? Or rather, is it not clear that the value of the slave either in Missouri or in Kentucky must govern? In such cases of mere trespasses, probably the value at the place of embarkation, or point from which the property is started, ought to govern. However this may be, the price of the property at the place where the conversion occurs will not do; for in the case put, slaves would be of no value in Illinois, unless their transportation to another market was in view; and if this is taken into consideration, notwithstanding there may be no capital seeking such investments, the rule, which fixes the value at the place of destination as the standard of damages, would be approximated, though not absolutely reached. Going no further for illustration than the case under consideration, we see, as a matter of fact, that the market value of the flour at New Orleans is not at all times the same as at Boston minus the cost of transporting it from one point to the other, though doubtless any considerable disparity could not long continue. Scarcity of capital or other circumstances may depress the price of an article in one market below its value in another, after deducting the expense of removing the article, though, in the present condition of trade, this state of things is not likely to continue long. But as the price of an article must mainly be regulated by its value for home consumption, and

must be so altogether if there is no capital engaged in its removal to other places, the price at the place of conversion would, in most instances, prove an inadequate compensation for the loss sustained by the owner.

In actions against carriers for the wrongful conversion of property entrusted to them, damages have been usually given according to the value of the goods at the place of destination. We do not see how the forwarding merchant occupies any better position, in respect to this liability, than the carrier. He is the agent of the consignor; and if he fails to discharge his duty to his principal, and converts the goods to his own use, the principal, or the party standing in his place, ought to be recompensed to the extent of his injury, having reference to proximate and natural results.

In Bell and others v. Cunningham and others, 3 Pet. 69, a firm in Leghorn were consignees of a cargo shipped from Havana by their correspondents in Boston, who owned a ship trading from Havana to Leghorn, under instructions to invest part of the proceeds in tiles and the remainder in paper, the whole to be shipped to Havana. The whole sum was invested in paper, taken to Havana, and sold and produced a loss instead of a profit, which would have resulted had the tiles been bought as directed. The profits, which the investment in tiles would have made at Havana, were held to be the measure of damages, although it was insisted that the defendants were only liable to account for the money which ought to have been invested in tiles at Leghorn, and not the value of the tiles at Havana. The breach of the contract, the court said, consisted not in nonpayment of the money, but in the failure to invest it in tiles. "Speculative damages," Judge Marshall added, "dependent on possible successive schemes, ought never to be given; but positive and direct loss resulting plainly and immediately from the breach of orders may be taken into the estimate. An estimate of possible profit to be derived from investments at Havana, of the money arising from the sale of the tiles, taking into view a

distinct operation, would have been to transcend the proper limits which a jury ought to respect; but the actual value of the tiles themselves *at Havana* affords a reasonable standard for the estimate of damages."

Where an agent is directed to invest the funds of his principal in a particular stock, and he neglects to do so, and the stock thereupon rises, the principal is entitled to recover the enhanced value, as if the stock had been purchased. (Mayne on Damages, p. 312.) So, if an agent improperly withholds the money of his principal, he is liable for the ordinary interest of the country *where it ought to be paid*, and the incidental expenses of remitting it, if it ought to be remitted. (Story on Agency, § 220, 221; Short v. Skipwith, 1 Brock. 103.)

The defendants, in this case, did not occupy the position of mere trespassers liable for a tort, but were entrusted by the shippers with the duty of forwarding the flour to Boston. The flour was delivered to the carriers as the property of the plaintiffs, who were the consignees of the shippers, and who had accepted and paid bills drawn upon the shipment. The delivery to the carrier vested the title in the plaintiffs under the circumstances, and their right was therefore prior, in point of time, to any lien which defendants might have acquired by reason of the prior indebtedness of the consignors to them. It is plain, however, that no such lien existed. They were only agents to receive the goods on commission to forward them to plaintiffs, and were advised by the bills of lading that the flour was shipped for and on account of Farwell & Co., the plaintiffs. Their attachment of the property, therefore, was not a simple trespass, but a breach of their duty as forwarding merchants, and the rule of damages applicable to similar agencies must be enforced.

Judgment reversed and cause remanded. The other judges concur.