## ARGUED AND DETERMINED

### IN THE

# ST. LOUIS COURT OF APPEALS.

## OCTOBER TERM, 1876.

3    27
101  ³562

FRANK R. RICE *et al.*, Respondents, *v.* INDIANAPOLIS & ST. LOUIS RAILROAD COMPANY, Appellant.

### October 17, 1876.

1. A voluntary appearance cures all defects of process, and defendant, after appearing and defending generally, cannot deny the jurisdiction of the court over his person.

2. In an action against a common carrier for the conversion of a part of goods shipped as first-class freight, but which were proved to be double first-class, the defendant is entitled to receive double rates, and to be credited therefor.

3. In an action against a common carrier, for conversion, plaintiff is entitled to the value of the goods converted, at the point of destination.

4. A classification of freight, with a view to escape the payment of the proper rate, by the consignor, will not disable the consignee, to whom the goods belong, from maintaining an action for conversion against the carrier. The payment or tender of the proper rate, where another rate has been received, is not necessary to the maintenance of an action for conversion.

5. Where a number of common carriers combine under a name, for the purpose of carrying freight for hire along the route of all, an action for conversion may be maintained against them jointly or severally; and, to maintain an action against one, it is not necessary to prove that the goods were lost while in his possession, nor to prove a special contract with him for their carriage.

6. Where A ships goods, securely boxed, to be delivered to B, and a part only are delivered, the presumption is that the loss occurred while the goods were in the carrier's possession.

Appeal from St. Louis Circuit Court.

*Affirmed.*

*John M. Woodson*, for appellant, cited: Middough v. St. Joseph & Denver City R. R. Co., 51 Mo. 521; Farnsworth v. Terre Haute & St. Louis R. R. Co., 29 Mo. 75; St. Louis v. Wiggins Ferry Co., 40 Mo. 580; Robb v. Chicago & Alton R. R. Co., 47 Mo. 540; Eberly *et al.* v. Moore *et al.*, 24 How. 147; Conkling's Treatise, 355–357; Wag. Stat. 292, sec. 19, p. 1016, secs. 13, 14; Nelson v. Brodhack, 44 Mo. 596; Cincinnati & Chicago Air Line R. R. Co. v. Marcus, 38 Ill. 220; The Chicago & Aurora R. R. Co. v. Thompson, 19 Ill. 578; 2 Hill. on Torts, 564, sec. 22; Add. on Con., 3d ed., 446, 467, 487; 2 Redf. on Rys. 114–120, and notes; Detroit & Milwaukee Ry. Co. v. Farmers' Bank, 20 Wis. 122; Foy v. Troy & Boston Ry. Co., 24 Barb. 382; Sweet v. Tuttle, 14 N. Y. 465; Gardner v. Clark, 21 N. Y. 399; Thompson v. Greenwood, 28 Ind. 327; Bond v. Wagner, 28 Ind. 462; Freeman v. Carpenter, 17 Wis. 126; Mahew v. Robinson, 10 How. Pr. 162; Bridge v. Payson, 5 Sandf. 210.

*Leverett Bell*, for respondents, cited: Orear v. Clough, 52 Mo. 55; Griffin v. Van Meter, 53 Mo. 430; Rippstein v. St. Louis Mutual Life Ins. Co., 57 Mo. 86; Peters v. St. Louis & Iron Mountain R. R. Co., 59 Mo. 406; Laughlin v. Central & Northwestern Ry. Co., 28 Wis. 204; Smith v. New York Central R. R. Co., 43 Barb. 225.

Gantt, P. J., delivered the opinion of the court.

The plaintiffs sued the defendant and the White Line Central Transit Company to the June term, 1874, of the St. Louis Circuit Court, alleging that the White Line Central Transit Company was an association composed of several enumerated corporations, of which the Indianapolis

& St. Louis Railroad Company was one, engaged in the business of transporting merchandise from New York to St. Louis as common carriers. That plaintiffs purchased in New York City 100 boxes of cigars, each containing fifty, and the same were, on July 1, 1873, delivered to the defendant, to be conveyed to the plaintiffs at St. Louis for hire. That defendants converted to their own use thirty-four of these boxes, of the value of $122, and for this sum they asked judgment.

The defendants appeared at the June term and asked time to plead, answer, or demur, which was granted. After the expiration of this time, during which no plea, etc., was filed, an agreement in writing was made, whereby plaintiffs gave defendants time to September 15, 1874, to plead, etc. On September 22d the White Line Central Transit Company filed a plea in abatement, denying that on July 1, 1873, or at any time, there was any such association as the White Line Central Transit Company in the State of New York or elsewhere, but say that they are engaged in the business of transporting merchandise between St. Louis and New York under the general name of the "White Line Central Transit Company." The plea was verified by affidavit. On the same day the Indianapolis and St. Louis Railroad Company filed a demurrer to the petition, alleging that plaintiffs did not inculpate defendant except as a member of the White Line, etc. Thereupon plaintiffs confessed the plea in abatement, and filed an amended petition charging all the several corporations composing the aforesaid White Line, etc., alleging that several defendant corporations were engaged in business as common carriers between New York City and St. Louis; that defendants styled themselves the White Line, etc. The rest of the petition was as in the original document. This amended petition was filed October 23, 1874. On October 28, 1874, the Indianapolis & St. Louis Railroad Company moved to dis-

miss the suit, because it did not appear in the petition that defendant had its chief office or place of business in the State of Missouri. The court overruled this motion, and defendant excepted. It then answered that it was a foreign corporation, created by the laws of Indiana; that it did not, at the commencement of this action, own and operate a railroad terminating opposite to the city of St. Louis, but at Indianapolis, Indiana. The answer proceeded to ignore the partnership of plaintiffs; admitted that it and the other defendants were, on July 1, 1873, engaged as common carriers between St. Louis and New York, under the general name of the White Line, etc., but that said business was carried on under certain limitations, by which the partners restricted their liability; that each company was to be liable only for loss incurred while the property was in its charge; and denied that the loss in this instance occurred while the property was in defendant's charge; that such merchandise as that of plaintiffs was subject to double rates, but plaintiff only paid single rates; that the boxes were not securely fastened. This answer was extended to great length, and set forth much irrelevant matter in anything but a plain and concise style. The plaintiffs moved to strike out many parts of this answer, and the court sustained the motion, defendants excepting. Among the points struck out were the following:

1. That defendant was an Indiana corporation, with its chief office at Indianapolis, and not owning or operating a railroad terminating opposite to the city of St. Louis.

2. That the defendant and its co-defendants have certain understandings among themselves as to the limits of their liability to third persons.

3. That the merchandise in question was not transported by the defendant and all of its co-defendants from New York to St. Louis, as pleaded in the petition, but was received at New York by the New York Central & Hudson

River Railroad Company, and by it transported to Buffalo ; was there delivered to the Lake Shore & Michigan Southern Railroad Company, and by it transported to Cleveland, Ohio, and delivered to the Cleveland, Columbus, Cincinnati & Indianapolis Railroad Company, and by it transported to Indianapolis and delivered to defendant, and by it transported to St. Louis and delivered to plaintiffs, in the same order as received by it.

A stipulation was filed that the answer should be treated as if duly replied to as to all new matter.

On February 16, 1875, a trial was had between the plaintiffs and the Indianapolis & St. Louis Railroad Company, plaintiffs dismissing as to all the other defendants, and there was a verdict for plaintiffs.

The evidence of plaintiffs tended to prove that 100 boxes, containing fifty cigars each, were delivered to the railroad company at New York City, for transportation to St. Louis and delivery to plaintiffs, for which a bill of lading was taken, and that under this bill only sixty-six boxes were delivered by defendant to plaintiffs. The value of the missing goods, the suspicious appearance of the case containing the boxes when tendered to plaintiffs, the prompt notice of claim for the delivery, and the refusal of defendant to accede to it were all shown, together with the partnership of plaintiffs.

On the part of defendant several witnesses were examined, mainly to the effect that the case containing the boxes was apparently in good order and inviolate when delivered to plaintiffs.

The court, at the instance of plaintiffs, instructed that if the jury believed, etc., that 5,000 cigars, securely boxed and shipped, were received by the White Line Central Transit Company at New York, to be carried under the bill of lading read in evidence, and delivered to plaintiffs at St. Louis, and that the case or package was delivered by de-

fendant to plaintiffs, with thirty-four boxes missing, the presumption is that the abstraction occurred while the cigars were in defendant's possession, and, unless the contrary is shown, they must find for the plaintiffs.

Defendant excepted to this ruling, and asked an instruction, which the court gave, that, if the jury believe that the rate on cigars from New York to St. Louis was twice first-class, that plaintiffs have only paid first-class rate, and that Kerbs & Spier, the shippers of the cigars, shipped the same as merchandise, to avoid paying double rates, then the defendant is to receive such double rates, and to be credited therefor.

Eight instructions were asked by defendant and refused. They were all refused rightly. The first in order was a demurrer to the evidence. The second was that a classification of the cigars by Kerbs & Spier as merchandise, with a view to escape double rates, would disable plaintiffs from maintaining this action. The third was to the effect that such a classification prevented plaintiffs from recovering unless they affirmatively and positively showed willful negligence on the part of the defendant. The fourth, that, unless double rates were paid or tendered by plaintiffs, they cannot recover. The sixth, that the goods must have been lost while in defendant's possession to warrant a recovery. The seventh was to the same effect. The eighth was like the second; and the ninth was that, if there was a special contract between the plaintiffs and defendant for the carriage of the goods, plaintiffs could not recover.

1. The fifth instruction asked by defendant was that which the court gave as above set forth. It cannot be necessary to dwell upon those that were refused. The action of the Circuit Court was correct.

2. The instructions given contained a fair statement of the law, and covered all the issues before the jury. The plaintiffs appear to have limited their demand to the value

of the cigars at New York. They were entitled to their value at St. Louis. *Farwell* v. *Price,* 30 Mo. 587.

3. Defendant, having appeared in court and defended the action generally, cannot afterwards deny that the court has obtained jurisdiction of the cause. *Peters* v. *St. Louis & Iron Mountain R. R Co.,* 59 Mo. 406. A voluntary appearance cures all defects of process, and renders it unnecessary to examine whether defendant could, by such service as was made, have been compelled to appear.

All the judges concurring, the judgment is affirmed.