93   501
101  ⁵562

# WILLIAM P. REAMER, Respondent, v. MORRISON EXPRESS COMPANY, Appellant.

### St. Louis Court of Appeals, April 1, 1902.

1. **Practice, Trial:** DISCRETION OF COURT PERMITTING SIGNING OF MOTION FOR NEW TRIAL AFTER FOUR DAYS. Where the omission to sign a motion for a new trial is a mere oversight of counsel, the court does not abuse its discretion in permitting it to be signed after it has been filed, though four days have elapsed from the return of the verdict.

2. ————: REMARK OF COURT MUST BE PRESERVED IN BILL OF EXCEPTIONS TO BE REVIEWED. Where a remark of the court in the jury's presence is not preserved in the bill of exceptions, it can not be considered by the appellate court.

3. **Counterclaim, What it is:** STATUTORY CONSTRUCTION: DISTINCT TRANSACTIONS. Under the provisions of section 605, Revised Statutes 1899, known as the "Practice Act," defining a counterclaim as one existing in favor of defendant and against plaintiff, between whom a several judgment might be had in an action arising out of the contract or transaction set forth in the petition as the foundation of plaintiff's claim, or connected with the subject of the action, in an action for conversion of a team seized by defendant to compel satisfaction of a claim for goods alleged to have been stolen while in plaintiff's custody, defendant's claim for the stolen goods is not a proper counterclaim, the transaction not taking place at the same time, and neither being dependent on the other.

4. **Damages in Conversion.** Where, in conversion, the actual damages assessed are below the maximum value of the property as estimated by witnesses, a claim that the damages are excessive can not be maintained.

5. **Conversion: WHEN PUNITIVE DAMAGES ARE AWARDED.** When defendant seized plaintiff's team and refused to return it unless he would comply with the demand to pay for goods of defendant's stolen from the wagon, and had the property attached in another State, into which they had taken it, an award of punitive damages in an action for conversion was warranted.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas*, Judge.

AFFIRMED.

*P. A. Griswold* and *W. F. Smith* for appellant.

(1) The reply of plaintiff was in legal effect a general denial only, the remainder being surplusage. Plaintiff could demur to one part of defendant's answer, and reply to another part, but he could not both reply and demur at the same time to defendant's counterclaim and in the same pleading. This rule applies to replies as well as answers. R. S. 1899, sec. 600; R. S. 1899, sec. 609; White v. Railroad, 34 Mo. App. 89; Long v. Towl, 41 Mo. 400; Young v. Schofield, 132 Mo. 661. (2) Plaintiff waived his objections to the sufficiency of defendant's amended counterclaim by pleading the general issue, without demurrer or motion to strike out. Boyd v. Day & Gorrell, 3 Bush (Ky.) 617; Henderson v. Davis, 74 Mo. App. 1; R. S. 1899, secs. 607 and 612. (3) The acts complained of by plaintiff in the petition, and by defendant in its counterclaim, are component parts of a transaction that grew out of the relation of the employer and employee created by the contract of employment existing between plaintiff and defendant, and, hence, defendant's counterclaim arises out of the contract which is the foundation of

plaintiff's claim, and plaintiff can not deprive defendant of the right to interpose a counterclaim by waiving the contract and suing on tort. Cow Run Tank Co. v. Lehman, 13-14, Weekly Law Bulletin, pp. 146-147; Pomeroy's Code Remedies, sec. 772; Railroad v. Greer, 4 L. R. A. 858; Glennon v. Lebanon Mfg. Co., 12 Law R. A. 321. (4) Defendant's counterclaim not only arises out of the contract relations between the parties, as above stated, but it also arises out of the "transaction" set forth in the petition as the foundation of plaintiff's claim. The "transaction" must be held to include all the facts and circumstances out of which the injury complained of by the plaintiff arose. 22 Am. and Eng. Enc. of Law, 396; Ritchie v. Hayward, 71 Mo. 560; Bank v. Lee, 7 Abbott's Practice Report, 392; Pomeroy's Code Remedies (3 Ed.), sec. 774; Emery v. Railroad, 77 Mo. 339; McAdow v. Ross, 53 Mo. 199; Empire Soap Co. v. Baggiano, 52 Mo. 204. (5) Any claim arising out of the transaction set out in the complaint may be set up as a counterclaim, whether in tort or contract. Patterson Code Pl., secs. 665 and 666; Bitting v. Thaxton, 72 N. C. 541; Tinsley v. Tinsley, 15 B. Mon. (Ky.) 454; Kamerick v. Castleman, 23 Mo. App. 481; Walsh v. Hall, 66 N. C. 233. (6) The remark made by the trial judge (referring to the act complained of by plaintiff) during the progress of the trial, and in the hearing of the jury, that "defendant didn't have any right to take the law into its own hands," was prejudicial to the appellants and constitutes ground for reversal. Wright v. Richmond, 21 Mo. App. 81; 1 Thompson on Trials, secs. 218, 219; Holliday v. Jackson, 21 Mo. App. 670.

*Adiel Sherwood* and *Joseph S. McIntyre* for respondent.

(1) Defendant did file a paper within four days after verdict and called it a motion for new trial, but that paper

was not signed by defendant or any one representing it as required by our statute, and, hence, was not a motion for new trial or anything else, and defendant might just as well have filed a blank piece of paper. R. S. 1899, sec. 619; Cochran v. Thomas, 131 Mo. 274; Bank v. Porter, 148 Mo. 176; Hesse v. Seyp, 88 Mo. App. 67.   (2)   Even admitting that there is anything before the court except the record proper, the actual damages found by the jury are amply supported in the evidence, and the verdict represents the reasonable and fair value of the property with six per cent interest from the date of the conversion to the time of trial; for the proper measure of damages is the market value at the time of the conversion with interest to the date of trial.   Spencer v. Vance, 57 Mo. 427.   (3)   Any taking or assumption of the right to control or dispose of the property of another constitutes a conversion, that is to say any wrongful act or interference with plaintiff's right is a conversion *per se*.   Warrick v. Baker, 42 Mo. App. 439; Mohr v. Langan, 77 Mo. App. 481; McLaughlin v. Baker, 64 Mo. App. 511; Laughlin v. Barnes, 76 Mo. App. 285.   (4)   The right, if any, which defendant may have had to recover against plaintiff the value of goods committed to his charge as an employee of defendant and by him lost through his negligence as alleged, has no connection whatever with the transaction set forth in the petition as the foundation of plaintiff's claim, to-wit: the conversion by defendant of plaintiff's property, and that right certainly can not be said to be connected with the subject of the action which was plaintiff's property converted by defendant (and shown unquestionably by the evidence in this case).   Standley v. Ins. Co., 95 Ind. 254; Himbrock v. Stark, 53 Mo. 588.

BLAND, P. J.—The suit was for the conversion by defendant of the following personal property belonging to the plaintiff, to-wit, one sorrel mare, one black mare, one two-horse wagon, one set of double harness, including collars and

bridles, two horse-blankets and two canvas horse-covers of the alleged value of four hundred dollars (at the date of the conversion, December 12, 1900) for which with interest, judgment was asked. Plaintiff also asked judgment for the sum of five hundred dollars punitive damages for the malicious, wrongful and willful taking of the property.

The answer admitted defendant to be a corporation as alleged in the petition, denied all other allegations, and set up the following specific defense:

"And answering further and more specifically, defendant denies that it has converted plaintiff's property as alleged in plaintiff's petition, or that it ever intended to convert same, but defendant states that the facts are that said property of defendant has been levied upon and attached by the sheriff of St. Clair county, State of Illinois, under and by virtue of a writ of attachment issued by the circuit court of said county of St. Clair on the fourteenth day of December, 1900, and served by said sheriff on the same day it was issued, and that said property is now and was at the time of bringing this suit *in custodia legis* and beyond the power and control of this defendant.

"(And for a further defense, and for a counterclaim to the cause of action set forth in plaintiff's petition aforesaid, defendant states that on or about, to-wit, the twelfth day of December, 1900, plaintiff was employed by defendant to haul and deliver parcels, packages and merchandise; that on the afternoon of said twelfth day of December, plaintiff was sent out on a route with instructions to deliver certain articles and call at certain places and collect certain other articles and bring same to defendant's office; that plaintiff by reason of his carelessness and negligence, and by reason of his own wrongdoing, lost certain articles of merchandise to the defendant's damage in the sum of $361.41.)

"Wherefore, defendant prays that plaintiff's petition may be dismissed, and that a judgment may be rendered against

plaintiff in the sum of $361.41 and for the costs herein accrued."

Respondent filed a motion to strike out the special defense on the following grounds:

"First, that the matter pleaded did not constitute a counterclaim within the meaning of the statute in such cases made and provided, for the reason that it does not show a cause of action arising out of the contract or transaction set forth in the petition as the foundation of plaintiff's claim, nor does said matter show by proper averments any connection with the subject of plaintiff's action.

"Second, that there is no showing that said pretended cause of action existed at the time of the commencement of this suit."

The motion was granted.

Appellant filed an amended answer setting up substantially the same special defense, but stated it with greater particularity and more in detail.

To the amended answer, respondent filed the following reply:

"For reply to the amended answer and counterclaim of defendant, plaintiff denies each and every allegation therein contained.

"Further answering, plaintiff says that the matter alleged by way of counterclaim in said amended answer, is not the proper subject of counterclaim in this action and no evidence is admissible in support thereof and that the same matter has heretofore been stricken out of the first answer filed by defendant upon motion of this plaintiff, because said matter was not the proper subject of counterclaim in this, that the facts alleged do not arise out of the contract or transaction set forth in plaintiff's petition as the foundation of plaintiff's claim; nor do they show by proper averment any connection with the subject of plaintiff's action."

The evidence is that appellant is an Illinois corporation,

doing an express business; that it has an office in East St. Louis, Illinois, and one in St. Louis, Missouri, on Washington avenue near the Eads bridge; that on and prior to December 12, 1900, respondent with his team, was hired by appellant at two and one-half dollars per day, to gather up packages in the city of St. Louis consigned to appellant for carriage; that on the twelfth day of December, 1900, respondent was given a list of places to call for packages which had been consigned to appellant; that after making several calls and loading into his wagon a number of such packages, he called at the Great Western Printing Company for a package. Respondent drove up in front of the office of the Great Western Printing Company, left his wagon standing in the street, as was his custom when calling for packages, and went upstairs to the office of the printing company for a package consigned to appellant. He asked for it, went back to the bundle wrapper for the package, received it and returned immediately to the street where he had left his team. When he got to the street his team was gone. He looked up and down the street for his team; not seeing it, he found a police officer, informed him of what had happened and telephoned Morrison, the superintendent of appellant, of what had happened. Morrison told him to go out and look for the team and wagon. This he did, and not finding it, he again telephoned Morrison, who told him to come to the office. When he arrived at the office he met one of Thiel's detectives and again started on the search for his wagon and team and continued to search for them until late in the night without finding any trace of them. After having his breakfast on the next morning, respondent went to a telephone and communicated with police headquarters, from which he was informed that his wagon and team had been found, and that some one from the Morrison Express Company had signed for it. Respondent then went down to appellant's office, reaching there about nine a. m. When he arrived there Morrison informed him that his team had been

sent over the river, that it would be back soon.     When the team was driven off there were five barrels and five jugs of liquor and some boxes of merchandise in the wagon that respondent had gathered up before going to the office of the Great Western Printing Company.     The liquor was missing from the wagon when the team and wagon was found on the night of the twelfth.     After respondent reached the office of appellant on the morning of the thirteenth, he was sent out by Morrison with one of Thiel's detectives to search for the missing goods and told to return at noon.

The stolen liquor was not found and respondent returned to the office of appellant at noon as instructed by Morrison. When he reached the office his team was not there and he asked Morrison if he was not going to have his team sent back. Morrison said he had no one to bring it back.     Respondent then said he would go after it himself.     Morrison said, "No, you continue the hunt this afternoon and to-morrow morning you come down in time for work, and I will have your team and wagon over here."     Respondent returned to the office the next morning at seven a. m. ready for work, but his team and wagon were not there.     He asked Morrison about the team. Morrison's reply was that he did not intend to bring them over until respondent paid for the lost goods.     Respondent contended that he was not liable for the lost goods and that if Morrison did not return his wagon and team he would sue for them.     Morrison's reply was: "You can sue and be damned; you will have to hire attorneys while we pay them by the year, and where you will be paying out a lot of money it won't cost us anything."

Respondent employed J. S. McIntyre, an attorney, to get his wagon and team for him.     This attorney in company with T. L. Crider went to see Morrison in regard to the matter and had an interview with him, in which Crider testified Morrison made the following statement:

"We then all three walked into the office over towards

the northwest corner. Mr. Morrison said that Mr. Reamer had been gathering up goods for them for sometime; that he worked on a salary and furnished his own wagon and team; and that on the previous evening he had on his wagon about $350 worth of whiskey besides one or two other packages which he was bringing to the office; and when he stopped at the Great Western Printing Company to get the package defendant had telephoned him to collect, some one had driven away with the whiskey and disposed of it, and that they would be obliged to pay for it, so in order to get even with Reamer they had taken his team over into Illinois, and were going to keep it until he should pay for the loss of the whiskey. Mr. Morrison said he knew they had no right to take the team, but that they had lawyers hired by the year, and they could make it cost Reamer more to get his team, and cause him a greater loss than if he were just to make up for a good share of the loss caused by the stolen whiskey. He said that he knew that Reamer was not worth it, but that his father-in-law was, and that they would cause him so much trouble in getting his team that the old man (meaning Reamer's father-in-law) would come up and pay a part of the loss."

Mr. Crider said further:

"Mr. McIntyre demanded the surrender of the team, upon which Mr. Morrison said they intended to keep the team to worry Reamer and get even with the damn cuss."

The evidence in respect to the value of the property converted is that the wagon was worth from two hundred and twenty-five to two hundred and fifty dollars. The two horses from one hundred and twenty-five to one hundred and fifty-five dollars, and the harness twenty-five dollars, altogether three hundred and seventy dollars to four hundred and five dollars.

Appellant offered to prove that respondent was intoxicated on the evening of the twelfth of December, when his team was stolen and driven off, and offered evidence tending

to prove its counterclaim, which offer was rejected by the court.

The team was found by the police and taken to a livery stable, and Morrison testified that the company was notified and sent and got the team and wagon, and sent them over to East St. Louis to deliver the packages that were not taken from the wagon and had the team put up in the company's stables and taken care of, and afterwards attached as the property of the respondent, for the payment of the loss on the goods that were stolen from the wagon, valued at three hundred and sixty-one dollars and forty cents. Respondent never saw his property after it was sent to East St. Louis by Morrison.

The jury returned a verdict for respondent, assessing his actual damages at four hundred and one dollars, and his punitive damages at five hundred dollars. After an unavailing motion for new trial, defendant appealed.

I. The motion for new trial was not signed when filed. This fact was not noticed until the motion was taken up for argument, when the court permitted it to be signed by appellant's counsel, and then considered it. Respondent contends that for the reason that the motion was not signed until after the lapse of four days from the return of the verdict, there was no motion for new trial. We can not take that view of the matter. The omission to sign the motion before it was filed was a mere oversight of appellant's counsel that did not prejudice the appellant, and we think the trial court exercised a wise discretion in permitting counsel to sign the motion after it had been filed.

II. The sixth ground set forth in the motion for new trial is as follows:

"The court erred in remarking (in the presence and hearing of the jury) during the trial of the cause, that the defendant did not have the right 'to take the law into its own hands,' since said words had a tendency to prejudice the minds

of the jury against defendant on the claim of punitive damages and otherwise."

The remark, if made by the court, is not found in the bill of exceptions, the only repository known in our appellate practice for preserving the evidence of what takes place during the progress of a trial. State v. Grant, 144 Mo. 56; Stern v. Foltz, 152 Mo. 552. The remark complained of is, therefore, not before us for review.

III. The principal error relied on by appellant for a reversal is that the court refused to admit any evidence tending to prove its counterclaim. Section 605 of our Practice Act (R. S. 1899) defines a counterclaim as "one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action arising out of one of the following causes of action: First, a cause of action arising out of a contract or transaction set forth in the petition as the foundation of the plaintiff's claim or connected with the subject of the action . . ." The transaction out of which a counterclaim may arise, includes all the facts and circumstances out of which the injury complained of arose. Ritchie v. Hayward, 71 Mo. 560; Emery v. Railroad, 77 Mo. l. c. 345.

The transaction which furnishes the plaintiff with a cause of action must in itself furnish the defendant with a cause of action against the plaintiff, or, it must furnish the facts and circumstances upon which the defendant's right of action is founded, in order to entitle the defendant to recoup when he is sued by the plaintiff.

Suppose the respondent was guilty of culpable negligence by leaving his team unattended in the street, thus affording the thief an opportunity to drive off the team and take appellant's goods from the wagon, what connection had respondent's negligence with the subsequent taking and conversion of his team and wagon by the appellant? The transactions did not take place at the same time, neither was dependent upon

the other, nor was the conversion of respondent's property in anywise connected with his negligence, if any, in leaving his team in the street. The counterclaim, therefore, was not one that comes within the statute (section 605, supra) and the trial court correctly excluded all evidence tending to prove it.

IV. The contention of appellant that the verdict for actual damages is excessive is not borne out by the evidence. The actual damages assessed by the jury are below the maximum value of the property as estimated by respondent's witnesses.

V. Appellant moved the court to instruct, in substance, that there was not sufficient evidence of wantonness, willfulness or malice to authorize the jury to award punitive damages. These instructions were denied and we think correctly so. The evidence discloses the most high-handed and oppressive conduct on the part of appellant in its effort to extort money from the respondent by removing his property beyond the boundaries of the State and refusing to return it unless respondent would comply with appellant's demand to pay for the property the thief had stolen from the wagon, and when he refused to submit to this extortion instituted an attachment proceeding in the jurisdiction to which it had wrongfully taken the property and where respondent did not reside and had the property attached there under judicial process which it had obtained by artifice and fraud. Such conduct falls but a slight degree below a positive crime and afforded an appropriate occasion for the award of punitive damages.

We discover no prejudicial error in the record and affirm the judgment. *Goode, J.,* concurs; *Barclay, J.,* concurs in the result.