C. E. BLACKMER et al., Respondents, v. THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, March 31, 1903.

1. **Carrier:** RAILROAD COMPANY: CONVERSION OF COAL, QUESTION FOR THE JURY. A coal company was notified by the defendant railroad company that thereafter none of its cars on the side track at the mines should be loaded with coal for any other customer than the defendant. Prior to such notification defendant had permitted its cars to be loaded to be carried to any consignee, and the coal company was under contract with plaintiffs to furnish them constantly a certain portion of the output of the mines. The coal company did not assent to the notification, but loaded the cars set out, and notified defendant's agent to bill the coal to plaintiffs. Instead of doing so, the agent marked the bill of lading for defendant's use, by whom it was appropriated. *Held,* that whether the coal was put on the cars for plaintiffs in such a manner as to constitute a delivery to them, so as to render defendant liable for converting plaintiffs' property, was for the jury.

2. ———: CONVERSION OF RAILROAD: MEASURE OF DAMAGE. Where a railroad company converted coal consigned to plaintiffs, under a contract by which plaintiffs were entitled to a certain part of the output of the mine, the measure of plaintiffs' damage was the value of the coal at destination, and not its value at the mine.

3. ———: COAL CONTRACTED TO CUSTOMERS: USED AND CONVERTED. Where a railroad converted coal consigned to plaintiffs, which they had contracted to deliver to their customers, and there was no evidence that defendant was compelled to use such coal or stop running its trains, but it was proved that the coal was willfully taken without regard to plaintiffs' rights, plaintiffs were entitled to recover punitive damages.

Appeal from St. Louis City Circuit Court.—*Hon. S. P. Spencer,* Judge.

AFFIRMED.

*Geo. F. McNulty* and *Robert A. Holland, Jr.,* for appellant.

(1)    There was no conversion by the appellant of any coal in the possession of or as the property of the respondents.    This coal was loaded into the cars of appellant, after appellant notified the Hillsboro company, that they were left at its mine only that they might be loaded for appellant's use, and, therefore, the coal came into the possession of the appellant, and appellant had a right to take it for its use.    (2)    This is an action of trover.    The actions of trespass and trover for personal property appropriated by a defendant differ, first, in that while in trespass there is always an original wrongful taking, or a taking made wrongful *ab initio* by subsequent misconduct.    In trover, the original taking is supposed and presumed in law to be lawful.    Cooley's Elements of Torts, p. 177.    (3)    The measure of damages where the goods have been delivered to a carrier and accepted by the carrier, and then converted to its use, is the value of the goods at the place of destination, less the cost of transportation.    Hutchinson on Carriers, secs. 776a, 769; Northern Trans. Co. v. McClary, 66 Ill. 233; Gray v. Packet Co., 64 Mo. 47; Railroad v. Jurey, 111 U. S. 584.

*Dawson & Garvin* for respondent.

(1)    The jury's finding of plaintiff's ownership of the coal, and delivery of it to defendant railroad company, as a common carrier of goods for hire, for the purpose of transporting and delivering it to the plaintiff as consignee at East St. Louis, is supported by the evidence and should stand.    Garneau v. Herthel, 15 Mo. 124; Grove v. City of Kansas, 75 Mo. 672; Blanton v. Dold, 109 Mo. 64; Seiter v. Bischoff, 63 Mo. App. 157; Honeycutt v. Railroad, 40 Mo. App. 674.    (2)    The jury's finding of willful and wanton conversion of the coal by the railroad company is also supported by the

evidence.   Such a conversion is, in fact, shown by admissions of defendant's agents.   Parson v. Smith, 133 Mo. 606; Downing v. Outerbridge, 79 Fed. 931.   (3) In actions against common carriers for hire for the wrongful conversion of property entrusted to them, the owner may recover, as actual damages, the value of the goods at the place of destination.   Farwell v. Price, 30 Mo. 587; Sturgeon v. Railroad, 65 Mo. 569; Rice v. Railroad, 3 Mo. App. 27; Wilson & Aull v. Railroad, 66 Mo. App. 388, and cases in other jurisdictions therein cited.

GOODE, J.—The petition in this case is in six counts, each of which charges the defendant with converting to its own use certain carloads of coal which belonged to the plaintiffs and had been put aboard cars on defendant's tracks at Hillsboro, Illinois, by the Hillsboro Coal Company, consigned and to be carried by the defendant to the plaintiffs.   The first count of the petition charges the conversion of five carloads of coal on December 18, 1901, and states that the plaintiffs, who were partners doing business in St. Louis under the name of the Hart Coal Company, were under contracts with various persons in said city to deliver daily large quantities of coal to run the factories of said customers, and that the defendant, well knowing the facts and that plaintiffs would not be able to procure other coal to supply its customers, willfully, wantonly, maliciously and against plaintiffs' protests and entreaties, wrongly converted said carloads of coal to its own use.   The remaining five counts of the petition state as many causes of action based on the wrongful conversion of carloads of coal on the 19th, 20th, 25th, and 26th days of December, 1901, and the 8th day of February, 1902.

The answer was a general denial.

The jury found a verdict for the plaintiffs and awarded them both actual and punitive damages on each

of the counts.    From the judgment entered on said verdict this appeal was prosecuted.

The evidence strongly supported all the causes of action stated in the petition and, indeed, to those stated in the fourth, fifth and sixth counts, practically no defense was made, the defendant admitting that it appropriated the coal consigned to the plaintiffs on those days, but contending that the measure of damages for the conversion was the value of the coal at Hillsboro where it was taken and not at East St. Louis, its destination.

As to the first, second and third counts, the defense was made that the railroad company never accepted the carloads of coal mentioned in said counts to be carried to the plaintiffs as the plaintiffs' property; but that on the contrary, said coal was delivered to the defendant by the Hillsboro Coal Company for its own use.

On December 18, 1901, the defendant notified the Hillsboro Coal Company that none of defendant's own cars set out on the side track at Hillsboro, should be loaded with coal for any other customer than the defendant itself.    This notification, as well as the appropriation of plaintiffs' coal, was induced by the urgent need of the railroad company for coal to operate its trains at that time, as there was a car famine so that coal could not readily be obtained from the different mines on defendant's lines and elsewhere.    Prior to said notification the defendant had permitted its own cars to be loaded with coal to be carried to any consignee, and when the notification was given, the Hillsboro Coal Company did not assent to the requirement that all coal loaded on the cars should be for the use of the railroad company; in fact, did not make any response to the notice.    The Hillsboro Coal Company could not have agreed to the proposition of the railroad company, because it was under a contract with the plaintiffs to furnish them constantly a certain proportion of the output of its mines, while plaintiffs were under contracts, as stated, with various consumers in the city of

St. Louis to furnish them so much coal daily to run their factories, and relied on getting their supply from Hillsboro. Coal cars were set out on its side tracks at Hillsboro by the defendant on the 18th, 19th and 20th of December, and were loaded as usual by the Hillsboro company for plaintiffs and the agent of the defendant company instructed by telephone, as had been the custom, to bill the coal to the plaintiffs at East St. Louis; instead of doing so he marked on the bill of lading that the coal was for the company's use. The Hillsboro people were powerless to prevent this action, although their employee who attended to the matter testified positively that he never consented for the coal to be taken by the railroad company.

In view of those facts, the most that can be said in favor of the defendant is that it was a question for the jury whether the coal was put on the cars for the plaintiffs in such a way as to amount to a delivery to them, so that when the railroad company afterwards took the coal it converted plaintiff's property to its own use. Perhaps there was evidence on which the jury might have found the coal was delivered to the railroad company instead of the plaintiffs on the said three days; but they found the other way, and there was abundant evidence to support that finding; for the testimony shows defendant had agreed to furnish cars for transporting all coal to be shipped under the contract between the Hillsboro Coal Company and the plaintiffs, and that those cars of December 18th, 19th and 20th were loaded by the coal company to be carried to the plaintiffs according to the ordinary course of business. At the instance of the defendant the court gave an instruction to the jury which told them that before they could return a verdict for the plaintiffs as to the coal embraced in the first three counts of the petition, plaintiffs had to prove by a preponderance of the evidence that said coal was the property of plaintiffs. We think

the defendant had nothing to complain of on the score that the verdict on the first three counts was unwarranted.

We do not accede to the contention that the measure of damages was the value of the coal at Hillsboro, instead of at East St. Louis. Some cases so hold, but the law in this State, and, we think, in most jurisdictions, is, that the true measure of damages in cases like this is the value of the goods at their destination. Farwell v. Price, 30 Mo. 587; Rice v. Railroad, 3 Mo. App. 27. It is palpable that plaintiffs' loss was what they could have sold the coal for at St. Louis, less the cost of transportation if they had to pay that expense. Their damages, therefore, could not be measured by the value of the coal at Hillsboro without doing them an injustice.

We think, too, this was a case for punitive damages. The defendant's urgency may have been great, but so was the plaintiffs'. If the defendant had to have coal to run its trains, plaintiffs, likewise, had to have coal to supply their customers in fulfillment of plaintiffs' contracts and so that the customers could run their factories; and an emergency, such as the defendant may have found itself in, affords no excuse for appropriating the property of another. The evidence does not show that the defendant was bound to use this coal or stop running its trains; and if that was shown it would be no justification for forcing plaintiffs and others into a like strait, though it might excuse the defendant from punitive damages. We see no good reason why, in an action for the conversion of property accompanied by circumstances of lawlessness and oppression, punitive damages should not be awarded as much as for wanton trespass to property; and it has been ruled that exemplary damages may be given in such cases. Carson v. Smith, 133 Mo. 606; Reamer v. Express Co., 93 Mo. App. 501; Downing v. Outerbridge, 79 Fed. 931.

Defendant makes the point that the instruction in

regard to the measure of damages is erroneous in that it does not direct a deduction from the value of the coal at East St. Louis of the cost of transportation to that point; that is, of the freight charges. The measure of damages for the conversion of property by a carrier during shipment is its value at destination, less the cost of transportation, if the consignee or owner has to pay said cost. But the uncontradicted testimony of the manager of the Hillsboro Coal Company is, that once a month the latter company paid the freight on all coal shipped to the plaintiffs; doubtless pursuant to some arrangement between plaintiffs and it. If plaintiffs bought the coal to be shipped at the expense of the coal company, their recovery ought not to be reduced by the freight charges.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.