N. K. FAIRBANK COMPANY, Appellant, v. ILLINOIS CENTRAL RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, July 19, 1912.   Motion for Rehearing Overruled October 15, 1912.

1. **CONVERSION: Necessity of Proving Ownership.**  In a suit for conversion, it is essential to a recovery by plaintiff that he prove his ownership of the property involved.

2. **SALES: Construction of Contract: Question of Law.**  Whether a given contract is one of sale which passes the property is a question of construction, to be determined by the court as a matter of law.

3. ———: ———: **When Title Passes.**  If a contract of sale requires anything to be done in the way of inspection, testing, weighing, or the like, before acceptance, title to the property remains in the vendor until such has been accomplished.

4. ———: **Executory Contract: Performance.**  An executory contract of sale becomes executed only upon delivery and acceptance of the goods in accordance with the contract and with intent to pass title.

5. **CONVERSION: Necessity of Proving Ownership: Sales: Facts Stated.**  A coal company entered into a contract to sell plaintiff coal f. o. b. cars in St. Louis, subject to plaintiff's right to reject shipments not meeting certain tests. This contract was afterwards modified so as to provide for delivery f. o. b. cars at the mine. A coal company loaded a large number of cars of coal at its mine on defendant's railroad, and sought to bill them to plaintiff, but defendant railroad company billed them to itself. In a suit by plaintiff against defendant railroad company for conversion, *held* that, inasmuch as plaintiff had the right to reject the coal if it did not meet the required tests, title thereto would not vest in plaintiff until it had accepted the same, and as no such acceptance was shown, plaintiff could not maintain the action.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*J. F. Merryman* for appellant.

The court erred in giving the peremptory instruction in which the jury was directed to find a verdict in favor of the defendant on each one of the twenty-one counts of the petition, which includes the 2nd, 3rd, 5th, 6th, 7th, 8th, 9th, 10th, 12th, 14th, 15th, 16th, 18th, 19th and 20th counts of plaintiff's petition, for in these fifteen counts there was a conflict in the evidence as to the question of delivery, and where there is such a conflict then it becomes a question of fact for the jury. Glass et al. v. Gelvin, 80 Mo. 297; Howdlett v. Zollman, 14 Me. 400; Hatch v. Bailey, 12 Cush. 29; Williams v. Gray, 39 Mo. 201; Blackmer v. Railroad, 101 Mo. App. 557; Thomas v. Ramsey, 47 Mo. App. 98; Howdlett v. Zollman, 14 Me. 400; Glass v. Gelvin, 80 Mo. 297.

*John G. Drennan* for respondent.

*Blewett Lee*, *W. S. Horton*, and *Watts, Gentry & Lee* of counsel.

(1) "An executory contract of sale becomes executed upon delivery and acceptance of the goods in accordance with the contract, and with intent to pass title." 24 Am. & Eng. Ency. Law (2 Ed.), 1047. (2) Where a given contract is one of sale which passes the property is one of construction to be determined by the court as a matter of law. Wells v. McNerney, 51 Atl. (Conn.) 1064; Aultman v. Silha, 85 Wis. 359; Irvin v. Edwards, 92 Tex. 258; 24 Am. & Eng. Ency. Law (2 Ed.), 1049. (3) If anything remains to be done in the way of inspection, testing, weighing or

the like before acceptance, the title remains in the vendor until all this has been done. McFadden v. Henderson, 128 Ala. 221; Clarke v. Wolf, 115 Ga. 320; McClung v. Kelley, 21 Iowa, 508; Smith v. Wisconsin Investment Co., 114 Wis. 151; 24 Am. & Eng. Ency. Law (2 Ed.), 1049.

NORTONI, J.—This is a suit in conversion. At the conclusion of all of the evidence, the court peremptorily directed a verdict for defendant, and judgment was given accordingly. From this judgment plaintiff prosecutes the appeal.

The petition contains twenty-one counts and in each count a recovery is sought for coal laden in cars at the mines of the Bessemer Washed Coal Company on defendant's railroad. Plaintiff, an incorporated company, owns and operates a large manufacturing establishment in St. Louis at which it consumes about two cars of coal per day. It appears that on June 17, 1909, plaintiff entered into a written contract with the Bessemer Washed Coal Company whereby it contracted to purchase, in accordance with the terms of such contract, all of the coal it required to operate its factory, and the Bessemer Washed Coal Company agreed to deliver such coal to plaintiff on the sidetrack at its factory at Third and Convent streets in the city of St. Louis. This contract was subsequently modified, however, with respect to the point of delivery, and as modified provided for delivery to be made f. o. b. cars at the mines of the Bessemer Washed Coal Company. The contract, by its terms, continued in force for one year from July 1, 1909.

Some three months after plaintiff's contract was made, defendant railroad company entered into a written contract with the Bessemer Washed Coal Company, whereby the coal company obligated itself to deliver to the railroad company not less than twenty-two nor exceeding forty-four cars of coal each day at

its mines on defendant's railroad in Illinois. For about six months, or until January 1, 1910, the coal company delivered coal for plaintiff, in accordance with the contract, as originally made, at Third and Convent streets in St. Louis, through transporting it over defendant's railroad to that place. But about the first of January, 1910, defendant railroad company refused to carry the coal to plaintiff and insisted on taking the full output of the coal mines for its own use under its contract with the coal company. At this time, plaintiff and the coal company modified plaintiff's contract stipulating for a delivery at the coal company's mines on defendant's railroad. This modification of the contract was orally made and goes to the extent mentioned only and all other provisions of the contract remain as before.

During the months of January and February, the coal company loaded a large number of cars of coal at its mines on defendant's railroad, in accordance with the modified contract, for plaintiff and sought to bill the same to it, but the defendant railroad company's agent at the mines, acting under instructions from defendant's general officers, billed all of these cars of coal to the railroad company as if it had been tendered by the coal company under its contract with the railroad company. Though the coal company protested at the time and insisted on billing the coal to plaintiff, it afterwards acquiesced in the conduct of the railroad company and accepted payment from it for all of the coal involved here. Plaintiff prosecutes the suit against the railroad company for conversion of the coal as if the coal were its property at the time the railroad appropriated it upon its contract.

No one can doubt that, to sustain this suit in conversion, it devolved upon plaintiff to show that it owned the coal, that is to say, that the title thereto

had passed from the coal company to it at the time the railroad company appropriated the same. Obviously plaintiff failed as to this, for there is no proof whatever tending to show that it accepted the coal in the cars at defendant's mines and its contract of purchase is purely executory in character. In other words, plaintiff's contract with the coal company does not evince a present sale of the coal but instead was to be executed in the future in accordance with the terms and requirements therein set forth. At the time the contract was made, the coal was in the earth and unmined. The contract provides that: "The coal company agrees to furnish and deliver to plaintiff f. o. b. cars at Third and Convent streets," St. Louis, and that plaintiff "agrees to purchase from the company all of the coal required for consumption at said factory during the term of this contract except as set forth in Art. 3 and to pay the company for each ton of 2000 lbs. avoirdupois of coal delivered and *accepted* in accordance with all of the terms of this contract." Art. 5 of plaintiff's contract with the coal company is as follows: "Should any coal delivered hereunder contain more than the per cent. of ash or moisture or fewer than the number of British Thermal Units per pound dry allowed under Arts. 1 and 4 hereof, *the customer may either reject or accept the same.* Art. 6 of the contract provides in substance that "the quality and size of the coal delivered hereunder shall be determined by test to be made by some responsible engineering company, to be mutually agreed upon, at the customer's expense." This test is to be made by taking a fair sample from *each carload* of coal to be delivered under the contract. (All italics are our own). Though the contract was modified as to the point at which the coal company should deliver the coal, no modification whatever appears with respect to the test and the right to accept or reject the same when tendered as above mentioned.

Whether a given contract is one of sale which passes the property is one of construction to be determined by the court as a matter of law. No one can doubt the proposition thus stated to be true. [See 24 Am. & Eng. Ency. Law (2 Ed.), 1048, 1049; Aultman & Co. v. Silha, 85 Wis. 359; Wells v. McNerney, 51 Atl. (Conn.) 1064; Irvin v. Edwards, 92 Tex. 258.] Obviously plaintiff's contract with the coal company is an executory one which did not operate the immediate passing of title upon the coal being placed in the cars and bills of lading demanded for plaintiff from the railroad company, for, if anything remains to be done in the way of inspection, testing, weighing or the like, before acceptance, the title to the property remains in the vendor until such has been accomplished. [See McFadden v. Henderson, 128 Ala. 221; 24 Am. & Eng. Ency. Law (2 Ed.), 1049.] It is clear that the contract with the coal company on which plaintiff predicates its right of recovery is on its face an executory one. This being true, the title to the coal remained in the coal company and had not passed to plaintiff at the time. No one can doubt that an executory contract of sale becomes executed only upon delivery and acceptance of the goods in accordance with the contract and with intent to pass the title. [24 Am. & Eng. Ency. Law (2 Ed), 1047.] There is no suggestion in the case that plaintiff tested the coal or caused it to be done, or that it or its agents ever saw it, for that matter; or that it ever accepted the coal as tendered under its contract. Neither does anything appear to indicate that it waived these provisions of the contract for its benefit concerning the testing and acceptance of the coal. Until something was introduced tending to prove an acceptance of the coal on the part of plaintiff, there was no question made for the jury as to the intention of the parties concerning the transfer of title thereto, and the court very properly directed a verdict for defendant on the theory

that under the law the title to the coal and the *jus disponendi* remained in the coal company. Obviously plaintiff was without title until the coal was both tendered to and accepted by it in the cars at the mines.

Plaintiff relies upon the case of Blackmer v. Cleveland, C. C. & St. L. R. Co., 101 Mo. App. 557, 73 S. W. 913, but that authority is not in point, for there the contract of sale appeared to be one which reserved no right of inspection and rejection in the purchaser, and it was competent for the jury to find the sale was completed and the coal accepted by the act of delivery to the carrier, on the theory that such carrier was the purchaser's agent. From what appears in that case, the contract here involved is entirely dissimilar. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.