WARREN BROWNING, Respondent, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 7, 1906.

1. **MASTER AND SERVANT: Negligence: Expected Injury.** The master is only required to use ordinary care for the safety of the servant, and against an injury that cannot be reasonably anticipated and would not have happened except under exceptional circumstances, it is not necessary to take precautionary measures, though if taken, they would have prevented it.

2. —— : —— : —— : **Evidence.** Upon a review of the evidence the case under judgment is held not to come within the above rule, and the section boss is held guilty of negligence in his method of helping the plaintiff and his fellow servant tighten an angle bar.

3. —— : **Negligence: Contributory Negligence: Safe place.** A master cannot defend himself by claiming that if guilty of negligence the servant would not have been injured if he had

118 App—29

been in a safe place, and the case under judgment is distinguished from cases where the servant has two ways of doing the master's work.

4. ———: ———: **General Instructions: Practice.** Instructions of a general character should hardly, if ever, be given.

5. ———: ———: **Instructions: Departure.** An instruction which is a departure from the allegation of the petition should not be given.

6. ———: ———: ———: **Evidence.** An instruction containing an assumption in the teeth of the evidence should not be given.

7. **EVIDENCE: Contradictory: Impeachment: Reputation.** Where evidence of contradictory statements and admissions on the part of a witness are admitted—that is impeaching evidence in contra-distinction to evidence merely contradictory, the general reputation of such witness for truth and veracity is then admissible.

Appeal from Mercer Circuit Court.—*Hon. George W. Wannemaker,* Judge.

REVERSED AND REMANDED.

*M. A. Low* and *Orton & Orton* for appellant.

(1) The charge of negligence cannot be sustained by the act of the boss in bearing down on the bar, because it was not such an act as would naturally occur to a prudent person as likely to cause injury. First, it was not to be looked for that the bar would slip off the head of the bolt, and second, even if it did, it was not expected that it would injure either of the parties bearing down on it. Hysell v. Swift, 78 Mo. App. 39; Hubbell v. Yonkers, 104 N. Y. —, 58 Am. Rep. 522; 1 Labatt on Master and Servant, page 303; Nolan v. Schuyler, 3 Mo. App. 300; Independent Tug Line v. Jackson, 84 Ill. App. 684; Seymour v. Hallman, 153 N. Y. 274; Calliott v. Mfg. Co., 71 Mo. App. 163; Glasscock v. Dry Goods Co., 106 Mo. App. 657. (2) The jury did not obey the instructions of the court. They were instructed that if the plaintiff had time to change his position from the end to the side

of the bar, after he knew that the boss was coming to help him, then he could not recover. On this question there was no conflict of evidence. (3) The verdict in this case is against the admitted facts in plaintiff's evidence, and the instructions of the court, as given in the above instruction. The physical facts show that the end of the bar was the place of his own voluntary choosing. Hence he could not recover. Moore v. Railway, 146 Mo. 572. (4) The court erred in refusing to allow the defendant to prove the good character of Arthur Overton, for truth. On the cross-examination of this witness by plaintiff's counsel, he accused him, the witness, of having threatened the plaintiff that he, witness, would give false testimony against him. This was such an impeachment of his standing as a witness as gave the defendant a right to sustain him by proving his good character. Walker v. Ins. Co., 62 Mo. App. 209. (5) The court erred in permitting plaintiff to introduce proof as to his character for truth. There is a broad distinction between sustaining the character of a disinterested witness who is impeached by cross-examination or by impeaching testimony, and sustaining the character of the plaintiff who is simply contradicted by disinterested witnesses. This distinction is well illustrated in the case of Fulkerson v. Murdock, 53 Mo. App. 151. This case is on all fours with the case at bar. Fulkerson v. Murdock, 53 Mo. App. 151.; Rogers v. Moore, 10 Conn., 13; Gaar, Scott & Co. v. Shaffer, 139 Ind. 191; 38 N. E. Rep. 811; Brown v. Moores, 72 Mass. 451 (6 Gray). (6) The first instruction given for plaintiff was error in this that the jury were told that if the defendant failed in prescribing the proper mode of doing the work, then the plaintiff was guilty of negligence. This does not confine it to any particular part of the work, in respect to which there was any ssue, and further, there was no evidence of any failure on the part of the defendant to prescribe proper rules or mode of doing the work. Poindexter v.

Paper Co., 84 Mo. App. 352; 1 Labatt on Master & servant, p. 468. (7) The second instruction for plaintiff was error, for the reason, that it does not confine the acts of Overton, alleged to be negligence, to such acts as are alleged in the petition. (8) The third instruction for plaintiff was error. (9) The sixth instruction for plaintiff was error. (10) The seventh instruction given for plaintiff is error.

*Platt Hubbell* and *George Hubbell* for respondent.

(1) A recovery for damages by Browning, for being struck with the claw bar, is authorized by the same rule of law that authorized a recovery by Hutson for be-struck with a pick. Hutson v. Railway, 50 Mo. App. 300; Buckalew v. Railroad, 107 Mo. App. 575; Fogus v. C. & A., 50 Mo. App. 250; Herriman v. Railroad, 27 Mo. App. 435; Eberly v. Railway, 96 Mo. App. 361; Railway v. Sharp, 63 Fed. Rep. 532; Dean v. Woodenware Works, 106 Mo. App. 177; James v. Mut. R. F. L., 148 Mo. 16; Ballard v. Railway, 51 Mo. App. 457; Grace v. Railway, 156 Mo. 301; O'Hare v. Railway, 95 Mo. 667; Butts v. Bank, 99 Mo. App. 173; Creighten v. M. W. A., 90 Mo. App., 387; Higgens v. Railroad, 43 Mo. App. 552; Connolly v. St. Joe Press, 166 Mo. 463; Ruth v. Transit Co., 98 Mo. App. 14. (2) Defendant's counsel misquote their third instruction. (3) Defendant's counsel harp on their one antiquated, discordant string that Browning selected his own position, chose his own method. This contention is based on the fallacy of their failing to consider the changed condition when the boss "butted in." There is no evidence to sustain this contention. Counsel for the railroad complain about leading questions. (4) No contradictory statement was proved against Arthur Overton—what he said was accepted as the truth. He wasn't accused of threatening the plaintiff with false testimony. No such accusation can be found in the record, against Arthur Overton. (6) Plaintiff's instructions

numbered one and two are sound law, and only serve to introduce a call for a finding of facts. (7) Plaintiff's instructions numbered three and four recapitulate the facts leading up to the question of negligence, and require a specific and definite finding of the facts constituting negligence, before the jury can find a verdict for the plaintiff. Stanley v. Railway, 119 Iowa 536. (8) By section 865, R. S. 1899, this court is prohibited from reversing the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error and materially affecting the merits of the action. Bertram v. Railway, 154 Mo. 655; Hogan v. Railway, 150 Mo. 51; Erickson v. Railway, 171 Mo. 666.

BROADDUS, P. J.—This is a suit for damages claimed as the result of an injury to the plaintiff caused by the negligence of defendant, while in its employ. The facts were, that on the 15th day of May, 1905, while the plaintiff with other employees of defendant under the section boss were engaged in repairing defendant's railroad tracks, he was injured while tightening up the bolts that fastened together angle bars with the ends of the rails between them. These bolts became loose as the result of jar caused by the constant passing of trains over the rails.

At the time plaintiff and a fellow workman by the name of Kooken had placed a bolt where one was missing. This bolt had been in use before and the threads on the end of it had become somewhat worn and battered. The angle bar is applied at each side at the joints where the ends of the rails come together. They are bolted at each end of each rail by two bolts through the rails. The hole through one of these bars is made oblong and the bolt to fit this kind of a hole is made with flattened sides, so that it will not turn in its place. It was shown that the oblong hole in the angle bar was also worn and defective; and that it was by reason of this

defect, combined with the defect in the bolt, that the bolt was caused to turn when the wrench was applied to the nut on the bolt for the purpose of tightening the angle bar.

In order to keep the bolt from turning while his fellow laborer, a man by the name of Kooken, was using the wrench upon the nut of the bolt to tighten the angle bar, the plaintiff was pressing with his weight upon the head of the bolt by using what is known as a claw bar. This claw bar is made of iron or steel, is fifty-seven inches in length and two inches in diameter. On one end it had a claw like a hammer with a spread of two inches. At the other end it was flattened.

Being unable to tighten the bolt by means of pressure upon its head by the use of the claw bar, Kooken proposed to plaintiff, to cut out the bolt and put in another.    The defendant's section boss, named Overton, who was about fifty feet away and who seemed to know what the trouble was, spoke up and directed the two to try again and he would come and help them. The plaintiff at the time was standing in front of the bar holding it, the claw end of which was up and the flat end on the bolt. While in this position, Overton came to their assistance and threw his weight on the bar, which slipped from the head of the bolt when Kooken applied the wrench to the nut, and it went down striking plaintiff in the abdomen injuring him. There was no suggestion by Overton to plaintiff to change his position from in front to the side of the claw bar, as was the customary position in that kind of work. In fact, Overton's action was sudden and gave plaintiff but little or no time for reflection. And there is nothing in the record that goes to show in what manner Overton, the boss, would act when he tendered his assistance. And there was nothing in the evidence to show that plaintiff's position was ordinarily one of danger. On the contrary, he stated that it had the advantage of giving him greater power for pressure on the bolt..

The grounds of negligence alleged, upon which plaintiff seeks to recover, are as follows: that, "said section boss, while the plaintiff was under his direction and control, negligently ordered the plaintiff together with another employee of 'defendant, plaintiff's co-laborer, to assist said foreman, or boss, adjust, tighten and secure a defective bolt in an angle bar on said track at the point where the rails of the track meet, or join to form a continuous line. Said bolt was then and there defective, in that it was crooked, too short, rusty, old and threads worn out, and was too small to be used in said place for said purpose. Said section boss failed to inspect and examine said bolt and angle bar. Defendant's section boss then and there negligently attempted to adjust and secure said angle bar with said defective bolt and negligently prescribed and required said work to be done in a negligent and improper manner."

"At the time and place aforesaid, said section boss negligently ordered plaintiff to assist in adjusting said angle bar and the tightening of said bolt, by ordering plaintiff to stand on the west side of the rails of said railroad track, and hold the head of said bolt with a claw bar, using said claw bar under the head of said bolt, using a spike maul as a fulcrum for said claw bar, and bearing down and pulling down at the other end of said claw bar, while plaintiff's co-laborer, under the orders of said boss, remained between the rails of said railroad track, attempting to tighten said defective bolt, by turning the nut of said bolt with a track wrench; and while plaintiff and his co-laborer, in obedience to said orders of said boss, were proceeding to adjust said angle bar, and tighten said bolt, in the method and manner aforesaid, said section boss then and there negligently took a position between plaintiff and the railroad track, and negligently took hold of said claw bar, and negligently bore down on said claw bar, with great force and weight, while said co-laborer of plaintiff was attempting to turn said nut." By reason of all which plaintiff alleges the claw bar went

down and he was injured. The jury on the evidence after being instructed by the court returned a verdict for the plaintiff in the sum of $2,000. The defendant appealed.

The appellant contends that under the evidence the court should have instructed the jury, as asked, that the plaintiff was not entitled to recover. Defendant urges: "The charge of negligence cannot be sustained by the act of the boss bearing down on the bar, because it was not such an act as would naturally occur to a prudent person as likely to cause injury. First, it was not to be looked for that the bar would slip off the head of the bolt, and, second, if it did, it was not expected that it would injure either of the parties bearing down on it. It was not such a tool as required any expert knowledge to use," etc.

"When an injury cannot reasonably be anticipated, and would not have happened except under exceptional circumstances, it was not necessary to take precautionary measures to prevent it, although if taken the injury would not have happened." [Hysell v. Swift & Co., 78 Mo. App. 39.] "A master is only required to use ordinary care in furnishing reasonably safe appliances for the servant and does not have to provide against all possibly anticipated happenings." [Glasscock v. Dry Goods Co., 106 Mo. App. 657.] There are many other authorities to the same effect and the principle seems to be well established. The plaintiff does not deny the foregoing as the correct rule of law, but denies its application to the facts of this case.

It cannot be denied that, if the section boss had not interfered with the plaintiff and Kooken, they would have performed their work in a reasonable and prudent manner by substituting a different bolt. They had made every reasonable effort to tighten the bars by the defective bolt and had failed when the boss interfered. He was aware of the difficulty and should have proceeded with proper caution. But, instead of doing so, he threw

his weigth upon the bar while plaintiff was holding it in line and in front of his body. It seems to us that a careful and prudent person informed, as the boss appears to have been, that the bolt would turn when the wrench was applied would apprehend that there was danger that the claw bar would in all likelihood slip from the head of the bolt and fall, and that he should have directed the plaintiff, or at least given him time, to change his position to one of safety. It was the weight of the boss that caused it to go down and strike plaintiff. And it was also a question for the jury to say whether the boss, in not taking his weight from bar when it slipped, was guilty of negligence.

The defendant misquotes instruction numbered 3, given at its instance. Consequently, the contention that the jury disregarded it in making up the verdict need not be given further notice.

As to whether the plaintiff was guilty of contributory negligence was submitted to the jury. Under the evidence, it could make no difference that plaintiff assumed a wrong position with reference to the bar if his act in that particular did not in any way directly contribute to his injury. The evidence tends to show that the handling of the bar in that position was not dangerous of itself and was reasonably safe, and that the injury was the direct result of the negligence of said boss. It is no defense for defendant to say, if it was guilty of negligence, that plaintiff would not have been injured if he had been in a safer place. The case therefore does not come within the rule promulgated in Moore v. Railway, 146 Mo. 572, and similar cases, where an employee, who had two ways of performing his master's labor, the one safe and the other unsafe, and he voluntarily chooses the latter, was held not entitled to recover damages caused by injury received while so employed.

Objections are made to the correctness of several instructions given at the instance of the plaintiffs. The first instruction is general and imposed the duty on the

defendant to use ordinary care to prevent injuries to its servants, and to use ordinary care for the safety of those engaged in its services in prescribing the method of doing the work. It does not appear in what method defendant was carrying on the work in question except that which would be usual in such cases, or that it was by reason of the method pursued the plaintiff received the injury. It should not have been given. Notwithstanding parties have been so often admonished that instructions of a general character should hardly, if ever, be given, the practice continues.

Instruction numbered 3 is also criticized because it introduces an element which is not alleged in the petition, viz., the bolt hole being too large for the bolt, which added to the tendency of the bolt to turn when the wrench was applied to the nut to tighten the angle bars. The fact that the bolt hole was defective was not relied on as an act of negligence. And it is safe to say that the condition of the bolt hole had as much to do with the turning of the bolt as the condition of the bolt itself. And it is rather probable that the bolt would not have turned if the hole had not been too large. · The instruction was clearly a departure from the allegations of the petition and should not have been given.

The sixth instruction is faulty in that it assumes that the boss ordered plaintiff "to hold said claw bar and assist in tightening the angle bar in the method mentioned in the evidence." The assumption is in the teeth of the evidence, which was that plaintiff was holding the bar when the boss came to his assistance.

Instruction numbered 7 is as follows: "Contributory negligence and assumption of risk are affirmative defenses and the burden of proving them is on the defendant." There was nothing in the case to show that the risk was one which the plaintiff assumed. And also nothing in his testimony, with the view we have taken of the case, that would authorize the inference of contributory negligence. Therefore, defendant's objection

to the instruction is without merit. The instruction was harmless at most.

The objection to instruction numbered 2 given for plaintiff is wholly without merit.

The defendant introduced evidence to impeach the veracity of the plaintiff by showing that he had made contradictory statements in reference to material facts in the case. Therefore, the court permitted him to introduce evidence as to his good character and to his reputation for truth. This action of the court defendant characterizes as error. "The mere contradiction of the testimony of the plaintiff, where he is a witness, will not justify the introduction of proof by him of his general reputation for veracity or honesty, when the matter shown in contradiction is in the nature of independent and not impeaching evidence, as where it is in the nature of an admission by the plaintiff against his interest." [Fulkerson v. Murdock, 53 Mo. App. 151.]

Defendant insists that under the ruling of that case the evidence of general reputation for veracity was not admissible. But we think otherwise. The evidence introduced did not consist of proof of independent facts tending to contradict plaintiff, but of evidence showing that he had made statements and admissions in conflict with the evidence he had given on the trial. In other words, impeaching evidence in contradistinction to the evidence merely contradictory. The true rule applicable is stated in Miller v. Railroad, 5 Mo. App. 471, and in Walker v. Ins. Co., 62 Mo. App. l. c. 220; Berryman v. Cox, 73 Mo. App. 67.

Other points urged by defendant for reversal are not well taken. For the errors noted the cause is reversed and remanded. All concur.