STATE *to use of* McCLENDEN, *Appellant*, v. JUNGLING, *et al.*

### Division One, May 22, 1893,

1. PUNITIVE DAMAGES. Punitive damages cannot be recovered unless it appears the act complained of was unlawful and was also wanton or malicious.

2. EXECUTION: EXEMPTION: APPRAISEMENT. Appraisers living in a well settled neighborhood, from a mile to a mile and a quarter distant from personal property levied on under execution, are *prima facie* from the neighborhood, within the statutory requirement relating to the appraisement of property exempt from execution. (Revised Statutes, 1879, Section 2,347).

3. ———: ———: WORKING ANIMAL. A law exempting from execution working animals of a named value, does not exempt one which is of greater value.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*Christian & Wind* for appellants.

(1) The court erred in excluding testimony tending to show the motive which actuated Jungling in his proceedings conceded to be unlawful. (2) The court erred in instructing the jury not to assess plaintiff's damages at more than one dollar, for defendant's trespass upon his wearing apparel and bedding. (3) *First.* The unlawful acts of defendant were committed wilfully and wantonly, and plaintiff was entitled to an instruction defining malice and permitting the jury to return a verdict of exemplary damages. It was therefore error in the court refusing instructions of that character asked by plaintiff and giving instructions to

return a verdict for actual value of property taken. *Goetz v. Ambs*, 22 Mo. 170; *Franz v. Hildebrandt*, 45 Mo. 123; *Perkins v. Railroad*, 55 Mo. 213; *Mills v. Noyes*, 12 Pick. 324. *Second*. The levy made upon property known to be exempt is of itself evidence of malice and entitled plaintiff to exemplary damages. *Lynd v. Picket*, 7 Minn. 184; s. c. 82 Am. Dec. 79. *Third*. And the taking of a bond to protect him is evidence of malice and entitles plaintiff to exemplary damages. *Carroll v. Green*, 7 Mo. App. 596.

*Huff & Hereford* for respondents.

(1) Exemplary damages can be given only in case of aggravated trespass committed in a wanton and malicious manner. 2 Sedgwick on Damages [8 Ed.], sec. 564; *Welch v. Stewart*, 31 Mo. App. 380; *Perkins v. Railroad*, 55 Mo. 213; *Trauermann v. Lippincott*, 39 Mo. App. 487. (2) The evidence in this case shows only a simple trespass, and such conduct under the rule in Missouri did not entitle plaintiff to more than actual damages. The damage done to plaintiff in levying on household goods was nominal. *Goetz v. Ambs*, 22 Mo. 170; *Freidenheit v. Edmunson*, 36 Mo. 231; *McKeon v. Railroad*, 42 Mo. 79; *Franz v. Hildebrand*, 45 Mo. 121; *Buckley v. Knapp*, 48 Mo. 162; *Edelman v. Transfer Company*, 3 Mo. App. 507; *Trauermann v. Lippincott*, 39 Mo. App. 487. (3) The action of the constable in refusing to give up the horse was not only justifiable, but it was his duty to so refuse. *Moltrie v. Elrod*, 23 Ga. 393.

BLACK, P. J.—The defendant Jungling was a duly appointed constable in the city of St. Louis, and this is a suit against him and the sureties on his official bond for an alleged wrongful and malicious trespass in

appraising, levying upon and selling property exempt from sale under execution.

The record discloses the following facts: Jungling as constable held an execution against the plaintiff in this suit for the sum of $70.00 and costs. He went to the plaintiff's house and there levied upon a stallion. He took the horse to a livery stable and directed the proprietor to place the horse where he could not be found, and the horse was placed on the third story in a box stall. The plaintiff, through his attorneys, notified the constable in writing to return the horse, calling the attention of the constable to the sections of the statute relating to exemption of property from attachment and sale on execution. On the next day the constable and the plaintiff, pursuant to agreement, met at the office of the attorneys representing the execution creditor. The plaintiff says he then told these attorneys that the horse was exempt, that they said they did not want him to waive his exemption, but they intended to sell the horse if they had to give a $400,000 bond. There had been some previous litigation between the attorneys and the plaintiff, resulting in an unfriendly feeling between them. On the same day, which was the day after the plaintiff had demanded a return of the horse because exempt, the constable called in three appraisers, and with them went through the plaintiff's house and appraised all of his houshold effects. They also appraised some other property found in and about the barn. They then went to the livery stable and appraised the horse. The plaintiff says the constable did not inform him of his exemption rights at the time of taking the horse. He admits that the constable told him on the next day that he was entitled to $300 in exemption, but the constable wanted him to take that amount out of the appraised property at the house, saying he could not have the horse. At the completion of the appraise-

ment, the constable placed a watchman at the house and barn, and there is some evidence to the effect that this watchman was drunk part of the time. He slept in the stable and did not go into the house, save on one occasion, and he was then invited in by the plaintiff's wife. At the expiration of about forty-eight hours the constable removed the watchman and some of the appraised property, namely, a sulky, one set of harness, a horse-blanket, a surcingle and bridle, appraised at $71.00. The constable did not, however, disturb or levy upon any of the household goods. They were all left in the house undisturbed as found when appraised. The constable then sold the articles so appraised at $71.00 and the horse which had been appraised at $450. One of the attorneys for the execution creditor purchased the horse at the sale for $210. After the sale the constable took the horse to the attorneys of the plaintiff in this suit and also the $210 and tendered to them the horse or money, but they declined to accept either.

Under the instructions given, the jury found for the plaintiff and assessed his damage at what is conceded to be the value of the property sold. The court also told the jury that the constable had no right to appraise or place a watchman in charge of the wearing apparel or clothing, but restricted the damages for such acts to the nominal sum of $1.

The principal complaint on the part of the plaintiff and appellant is that he should have been awarded exemplary damages, and that the court erred in refusing to instruct upon that subject. To entitle the plaintiff to recover punitive damages he must show that the act complained of was unlawful, and further that it was a wanton or malicious act. In other words he must show an unlawful act coupled with an intentional wrong. *Goetz v. Ambs*, 27 Mo. 28; *Kennedy v. Rail-*

*road,* 36 Mo. 365; *Engle v. Jones,* 51 Mo. 316; *Perkins v. Railroad,* 55 Mo. 213; *Wills v. Noyes,* 12 Pick. 324. It is therefore important to first inquire how far and to what extent the acts of the constable were in fact unlawful; for an action like this cannot be founded on a lawful act.

As the plaintiff was the head of a family, some of the articles which were appraised, namely, the wearing apparel and the beds and bedding, were exempt without regard to their value. (Revised Statutes, 1879 sec. 2343). An appraisement of such articles was therefore unnecessary. The law, however, only exempts "other household and kitchen furniture" to the extent of $150 in value, so that it was necessary and proper to appraise all such articles to see that they did not exceed that limit in value. It was also proper to appraise the stallion; for if it be conceded that he was a "working" animal, still the law as it then stood only exempted "working animals of the value of $150." Again, it was necessary and proper to appraise all the property, not exempt without regard to value, to enable the execution debtor to make his election of property not exceeding in value $300, under section 2346. As to the property included in the appraisement, the only error on the part of the constable was in including therein the wearing apparel, beds and bedding.

But it is further insisted that the appraisers were not selected "from the neighborhood," as the statute requires. Plaintiff resided in North St. Louis, and the appraisers resided from a mile to a mile and a quarter distant from him. The evidence is, that the intermediate country was well settled. Neighborhood is "an adjoining or surrounding district." Black's Law Dictionary. Whether a place is in the vicinity or in the neighborhood of another place depends upon no arbitrary rule of distance or topography. 16 American

and English Encyclopædia of Law 485, n. 1. The neighborhood of an individual will, of course, cover a larger space in a sparsely settled country than in a city, but we think this evidence fails to show that these appraisers did not reside in the neighborhood of the plaintiff. The *prima facie* case made by the evidence is that they were of his neighborhood.

The weight of the evidence is to the effect that the horse was worth from $200 to $300, that the appraisers fixed his value at $450 because they understood he was a blooded animal. Two of them were called as witnesses, one by the plaintiff and one by defendant, and their evidence and all the other evidence shows clearly that they acted according to their best judgment. There is an utter failure of proof to sustain the charge that the constable was instrumental in having the property or any of it appraised at an excessive value.

The further contention is that the constable violated the law in not informing the plaintiff of his exemption rights at the time he took the horse. The constable did not give the plaintiff such information on the day he took the animal, but he did give the plaintiff information of his exemption rights on the next day and before the horse was appraised, and in the meantime the plaintiff had advised with his counsel and demanded a return of the horse because exempt. The fact that the constable failed to notify the plaintiff of his exemption rights on the very day he took the horse does not show wantonness or malice.

It seems the plaintiff insisted all the time that the horse was exempt, and this, too, regardless of the fact that the animal had been appraised at $450. This claim made by him cannot be supported. Though we treat the stallion as a "working" animal, still he was not exempt under section 2343 because appraised at a value in excess of $150. The plaintiff had no right

to take the horse under section 2346 because appraised at more than $300. There was, therefore, nothing left for the constable to do but sell the animal. The sale was therefore legal.

The constable had nothing to do with the ill feeling between the plaintiff and the attorneys for the execution creditor, and there is nothing left upon which to base a claim for exemplary damages, except the fact that the constable in causing the household property to be appraised included in the appraisement the wearing apparel, and the beds and bedding, no part of which was removed or disturbed, and the further fact that he left a watchman in charge of all the property appraised at the house and barn, some of which was subject to sale on execution. Though there is some evidence that this man was drunk part of the time, still the evidence is all to the effect that he did not go into the house except on one occasion, and he was then invited in. In our opinion the plaintiff made out no case for instructions upon the subject of exemplary damages, and it follows that the court did not err in refusing to instruct on that subject.

It appears Jungling succeeded one Miller in the office of constable, that Miller had this execution in his hands for collection while he was constable, and that Jungling was his deputy at that time. Miller was called as a witness by the plaintiff and asked if he had a conversation with Jungling about the collection of the execution while Jungling was acting as his deputy, to which question the defendant objected, and the court sustained the objection, to which ruling the plaintiff excepted. The plaintiff did not state what he proposed to show by this witness, and there is nothing to show that the alleged conversation had any relevancy to the issues on trial, so that it cannot be said the court erred in sustaining the objection to the question. Other

·complaints are made to the action of the court in excluding evidence. It is enough to say that in our ·opinion they are not well taken. The judgment is .affirmed. All concur.