## NELSON, Respondent, v. HALL, Appellant.

**St. Louis Court of Appeals, February 16, 1904.**

1. **EQUITY: Appellate Practice.** In an equitable proceeding, where the record is incomplete and the evidence offered at the trial has not all been preserved, the appellate court will not consider the testimony.

2. ———: **Fraud: Refusal of Defendant to Testify.** Where grave charges of fraudulent conduct were made against the defendant in the statement of the plaintiff's cause of action, the failure of the defendant to testify on his own behalf and make explanation of incriminating testimony offered by the plaintiff, must be regarded as strong circumstances against him.

Appeal from Greene Circuit Court.—*Hon. J. T. Neville,* Judge.

AFFIRMED.

*W. Cloud* and *R. H. Davis* for appellant.

(1) Special findings bear the same relation to a judgment that a special verdict bears, and performs the same offices that a special verdict performs. 8 Ency. Pl. & Pr., p. 949; Blount v. Spratt, 113 Mo. l. c. 55; Nichols v. Carter, 49 Mo. App. l. c. 405; Bates v. Bower, 17 Mo. 550; Land Company v. Bretz, 125 Mo. l. c. 423. And they must contain a finding on every material controverted fact necessary to support the judgment. 22 Ency. Pl. & Pr., p. 984. And they should be taken most strongly against the party upon whom rests the burden of proof. 22 Ency. Pl. & Pr., p. 996. And a special verdict can not be aided by intendment. 52 Ency. Pl. & Pr., 997; Collins v. Riley, 104 U. S. 327; Vansyckel v. Stewart, 77 Pa. St. 124. (2) A special verdict must be responsive to the material issues of the pleadings

in order to support, and if not responsive the judgment must fail. 22 Ency. Pl. & Pr., 986; Chicago, etc., R. Co. v. Burger, 124 Ind. 275; Stinnett v. Sherman, 43 S. W. Rep. 847; Stillman v. Gano, 39 S. W. Rep. 559.

*Barbour & McDavid* and *O. L. Cravens* for respondent.

(1) The failure of Hall to testify at the trial of this case raises a strong presumption in favor of the charges of fraud alleged against him and his failure to deny the truth of the testimony of Nelson, Cowley, Jones and Conner, or to present any evidence of his good faith, utterly destroys any possible inference that can be made that Hall is innocent of the charges against him stated in the petition and testified by plaintiff and his witnesses. His position in this court now concedes the truth of these charges. In fact he has never occupied any other position. Mabary v. McClurg, 74 Mo. 575; Baldwin v. Whitcomb, 71 Mo. 651; Fitzpatrick v. Weber, 168 Mo. 572. (2) In equity the plaintiff did not, as contended, simply attempt to get a lien, but he actually secured a lien on the parcels designated to be conveyed to him; and not a lien merely but his rights were such that he is regarded by the decisions of this court as he would be regarded by the decisions of other courts—in the light of a purchaser. The debtor is bound in conscience to correct the mistake. Rhodes v. Outcalt, 48 Mo. 367; Cited and approved: 66 Mo. 370, 81 Mo. 393; Townsend v. Vanderwerker, 160 U. S. 171, 40 L. Ed. 383; Potter v. McDowell, 43 Mo. 93; Logan v. Smith, 62 Mo. 455; Linnville v. Savage, 58 Mo. 248; 20 Am. and Eng. Ency. Law (2 Ed.), 1040; Loewen v. Forsee, 137 Mo. 29. (3) Equity will grant all relief necessary to render the remedy completely effective to compel the fraudulent party to make good his fraudulent misrepresentations. Pomeroy's Equity, secs. 303, 899, 910. And this includes treating him as a trustee

with respect to the property he has acquired by his fraud. That where one who obtains money or property which does not equitably belong to him and which he can not in good conscience retain or withhold from another, who is beneficially entitled to it, a constructive trust arises. And this is so even though assumpsit may lie against the wrongdoer. Pomeroy's Equity, sec. 1047; Clark v. Bank, 57 Mo. App. 277.

REYBURN, J.—In the early part of the year 1900, appellant Hall, who owned a lumber yard in the city of Granby, while returning therefrom to Monett, where he was then living, encountered on the train his codefendant Conner, with whom he had been acquainted for several years, a carpenter by trade and also a resident of Monett. Hall then stated to Conner that his lumber yard was overstocked with high-priced lumber, and as a measure of relief he must put it in buildings, and he proposed to Conner the building of some houses at Monett, to which Conner replied, that he doubted whether they could be made profitable. Soon after this conversation, at instance of Hall, Conner negotiated the purchase of two lots, known as numbers seven and eight, in block number 23, of city of Monett; the purchase was conducted by Conner, the price paid for both, five hundred dollars, of which two hundred dollars were paid in cash, furnished by Hall, and delivered to Glassner, their owner; a warranty deed dated June 19, 1900, was taken from him to Conner as grantee. Conner in turn executed two deeds of trust of same date, June 20, 1900, to A. V. Darroch, trustee, each conveying one lot and purporting to secure ten notes of two hundred dollars each, all executed by Conner to order of Hall and payable respectively, one each year after date. Lumber was then shipped from the Granby Lumber yard for houses on both lots, and a dwelling completed on lot number seven, the corner lot; but the lumber piled on the other, the inner lot, number eight, was later disposed of and

removed.  Lot seven and house erected thereon were conveyed by Conner and wife to Mamie Hull by warranty deed, dated April 10, 1901, and a deed of trust taken back, conveying the property to Robert Johnson, as trustee of Hall, securing $1,985, evidenced by forty-four notes of forty-five and fifty dollars each, the first maturing May 21, 1901, and one due each third month thereafter.  All these deeds were duly recorded.  In July, 1900, plaintiff Nelson, manager of the Long-Bell Lumber Company, a creditor of Hall, and W. R. Cowley, its attorney, called on Hall, and pressed him for adjustment of an indebtedness to their concern, then exceeding three thousand dollars, upon which Hall at the time paid a small sum on account and closed by notes for the balance at sixty and ninety days, secured by collateral, a part of which later proved valueless, and a part consisting of notes secured by mortgage on lot number eight.  This property was in plain view from Hall's residence, where the parties were gathered, and from which Hall pointed it out and described the lot conveyed as located on the corner of the second block north and on opposite side of the street.  The representatives of the creditor lumber corporation, inspected the property and apparently satisfied, accepted Hall's notes above described, including those secured by mortgage on lot eight.  The notes received for the balance of the debt were not met, and in October, following, Nelson again waited on Hall, found another creditor's representative also pressing Hall, and a settlement on behalf of all Hall's creditors was discussed and later a meeting of his creditors was held, a statement of his assets prepared by him, submitted to them and a trust deed made respondent Nelson, conveying the remaining stock at the lumber yard, sundry accounts, and certain notes, including the notes executed by Conner and secured by his deed of trust on lot number eight; the conveyance being in trust to Nelson as trustee for creditors of Hall, enumerated, with power in the trustee to reduce the

trust property to cash, distribute its proceeds pro rata among the creditors listed, the grantor agreeing to pay them the balance of their respective debts, if any then remained unpaid, within five years from the date of the trust instrument. Throughout the negotiations with Hall by Nelson and other representatives of his creditors, the false impression was created, encouraged and tolerated that among the securities conveyed were the notes secured upon the corner lot with dwelling thereon, or to be built thereon; it was charged by the respondents, and the proof tended to establish, that Hall, as an inducement and consideration to the creditors to accept the trust agreement, fraudulently represented that the mortgage notes delivered were secured upon lot numbered seven upon which the dwelling had been or was to be erected, and not upon lot numbered eight which remained unimproved, but which was discovered to be the lot described in the deed of trust securing the notes delivered to the trustee of the creditors; whether any intention ever existed to improve also lot eight was controverted and doubtful.

This action was in nature of an equitable proceeding on behalf of the trustee in the deed of trust for the benefit of Hall's creditors, against the latter, his wife, Conner, Mamie Hull, the purchaser from Conner of lot seven, her husband, Robert Johnston, trustee in the mortgage, and another party (essential to be joined at inception of action but later no longer a necessary party) as defendants. The bill was voluminous and described at length the various transactions briefly summarized above, charged a fraudulent conspiracy between Hall, his wife and Conner to defraud creditors of the first named, averred fraudulent representations by Hall and Conner, that the notes tendered and later delivered to the trustee, respondent Nelson, were secured by first mortgage upon the unimproved lot (number eight), in lieu of upon the improved lot; that after the fraudulent substitution of the notes secured by

lot eight, Hall sold and caused to be conveyed lot seven with dwelling to the defendants Mamie and O. S. Hull, for a consideration expressed of twenty-five hundred dollars, but paid by notes for two thousand dollars in all, the amounts and maturities of which were described and secured by deed of trust to Robert Johnston, as trustee of Hall, and prayed judgment that the Conner notes held by respondent be declared a first lien on lot seven, for appointment of a receiver, for injunctive and general equitable relief. Defendant Hall, interposed for his defense, an answer containing a general denial, and admitting the execution of the trust deed which was embodied in full; and averring that respondent as trustee had proceeded to administer the trust therein created, but charged mismanagement in particulars detailed, and specifically averred that there was no equity in plaintiff's bill entitling him to relief, and concluded with prayer for removal of Nelson from the trusteeship, and an accounting by him as trustee.

The answer of Mary M. Hall, wife of the principal defendant, was a general denial. The defendants, Mamie and O. S. Hull, pleaded also a general denial coupled with allegations of payment of part of the notes described by plaintiff. The separate answer of Conner, after a general denial, acknowledged the execution of the notes mentioned in plaintiff's complaint, and their delivery to plaintiff, but averred that the notes were without consideration, the consideration having failed, and that plaintiff was not an innocent purchaser for value, and closed with a prayer for their cancellation. After trial, and prior to decision of the cause, defendant Conner and wife filed an amended answer, admitting the execution of the notes and deed of trust described as conveying lot number eight, and acknowledging their own insolvency.

The testimony introduced by plaintiff, as gathered from the abstracts submitted, consisted of the evidence

of Nelson, of one Jones, a representative and officer of one of the creditors named in the deed of trust, the attorney of the Long-Bell Lumber Company, all of whom participated at various stages, in the negotiations with Hall preliminary to the execution and acceptance by his creditors of the deed of trust; and the evidence of Conner, together with documentary proof embracing the various conveyances, deeds, mortgages and mortgage notes involved in the transactions mentioned.    The defendant Hall refrained from tendering any testimony in his own defense, but contented himself at close of plaintiffs' case by submitting a motion to dismiss plaintiffs' bill, as stating no facts sufficient to constitute a cause of action and because the evidence did not warrant a judgment; this the court overruled, but granted the application for a special finding and found the following:

"I find that Hall represented to plaintiff that he would give him the notes that were secured by deed of trust on the lot on which the house was located, and that he intentionally deceived Nelson and gave him the notes secured by mortgage on lot eight, which was practically valueless.    That plaintiff and the creditors he represented were defrauded and deceived and that they thought and understood they were getting the security of the lot seven and the dwelling thereon.

"Defendant Hull bought after this suit was brought and has given 44 notes, 43 of which were for $45 and one for $50; seven notes have been paid up to this time and $30 on the 8th.

"I order Hall to turn over and give to plaintiff the remaining notes for the purpose of executing his trust and order plaintiff to deliver back the Conner notes which is done here in court."

A decree in favor of complainant was entered in accordance with such finding, from which defendants have appealed.

As is apparent from the preceding statement, this cause is not presented to this court by appellants for

its review, in as lucid and intelligible a shape as might be desired. The facts out of which the controversy emanated are at best complex, the pleadings involved and the record is not complete, as all the evidence offered at the trial has not been preserved, and the well-recognized rule of appellate practice governing equitable proceedings prohibits the consideration of the testimony. Heffernan v. Weir, 72 S. W. Rep. 1085. But the abstracts of the testimony and briefs of counsel have been carefully and diligently considered, and we can not adopt the view urged by appellants, that the complaint contains no equity and respondent was not entitled to equitable relief under the evidence adduced. The fact that Hall, against whom such grave charges of fraudulent conduct were made in respondents' statement of his cause of action, did not appear and testify in his own behalf and failed to deny under oath, or make any effort to afford an explanation of the incriminating testimony offered on behalf of respondents, can not but be regarded as strong circumstances against him, awakening suspicions, and justifying most serious and adverse conclusions and presumptions. Mabray v. McClurg, 74 Mo. 575; Baldwin v. Whitcomb, 71 Mo. 651. The apology for his continuing mute under the severe arraignment of this action, advanced by his counsel at the oral argument, that criminal proceedings were pending against him, can not be accepted as satisfactory. The petition herein was replete with charges of fraud, which were found sustained by the trial court from the evidence, and in the state of the record, we are not justified in disturbing this finding.

The judgment is, therefore, affirmed. *Bland, P. J.,* and *Goode, J.,* concur.