R. F. SUMMERS, Defendant in Error, v. S. A. KEL-
LER et al., Plaintiffs in Error.

Springfield Court of Appeals, January 3, 1911.

1. **PRACTICE: Demurrer: Waiver by Answering.** Where a de-
murrer to the petition is overruled and defendants filed an
answer, this waives any right they might have had under the
demurrer, except that the petition wholly fails to state a cause
of action and that the court did not have jurisdiction of the
subject-matter of the suit.

2. **PLEADING: Wrongful Taking of Property: Exemplary
Damages: Sufficiency of Petition.** The allegations in one of
the counts in a petition seeking to recover actual and punitive
damages for wrongfully obtaining a certificate of deposit from
plaintiff and getting it cashed, are examined and held to state
a cause of action.

3. **DAMAGES: Exemplary Damages.** Before exemplary damages
can be awarded the act complained of must be unlawful, must
result in actual damages, and must be accompanied by an in-
tentional wrong, or must have been done under such circum-
stances that the law will imply the evil intention.

4. ———: ———: **Larceny.** Exemplary damages may be
awarded in civil actions for damages for larceny.

5. ———: ———: **Actual Damages.** Exemplary damages can-
not be awarded unless actual damages are also suffered, and
the actual damages must be susceptible of ascertainment, and
of being measured by some legal standard to authorize recovery
therefor.

6. ———: ———: ———: **When Act is a Crime.** Neither
the fact that the act complained of is a crime, nor the further
fact that the value of the property injured, destroyed or con-
verted can be accurately ascertained, will prevent the assess-
ment of punitive damages.

7. ———: ———: **Discretion of Jury.** The award of exemplary
damages never goes as a matter of right, but is discretionary
with the jury in all cases, and the amount to be assessed when
awarded is also discretionary, subject, however, to the approval
of the court.

8. ———: ———: **Excessive Verdict.** The assessment of $1500
exemplary damages was held not excessive in a case where
the evidence showed that defendants obtained from plaintiff

drafts to the amount of $800 under circumstances that amounted to a larceny.

9. **WITNESSES: General Reputation: Evidence.** Where defendant attacks the veracity of plaintiff by seeking to show that plaintiff was a gambler and had been arrested and prosecuted for crime, it was proper for plaintiff to introduce evidence to show his good reputation for truth and veracity.

10. **EVIDENCE: Witnesses: Impeaching Party by Former Deposition.** Where defendant refused to testify in the taking of his deposition on the ground that his answer might form the basis for a criminal prosecution against him, and in a trial of the cause defendant testified concerning the same transaction which is the subject-matter of the suit, it was not error to permit the introduction of the deposition for the purpose of contradicting his testimony at the trial.

11. ————: **Party Charged with Wrong Refusing to Testify.** In a civil action where a party is charged with being implicated with another in wrongfully taking property from plaintiff after getting him intoxicated, and there was some evidence tending to show his connection with the wrong, the fact that he does not testify at the trial, and made no explanation of his conduct, is a strong indication that he was implicated in the wrong.

12. **CONSPIRACY: Pleading: Proof: Joint Liability for Tort.** In an action charging defendants with conspiracy, even though there had been no previous understanding or agreement between defendants that they would inveigle plaintiff into a game of poker while he was intoxicated and steal from him the certificates of deposit, yet if, as a matter of fact, they did cooperate in accomplishing this purpose, they were jointly liable and it is not necessary to prove a prior conspiracy.

13. **NEW TRIAL: Newly Discovered Evidence: Diligence.** A party is not entitled to a new trial for newly discovered evidence, where a proper showing is not made as to diligence, or that he could not have proven the same facts by other witnesses.

14. **PLEADING: Proof: Variance: Wrongful Taking of Property: Gambling: Larceny.** Plaintiff sought to recover for damages from defendants for obtaining from him a certificate of deposit. The petition contained several counts covering the same transaction. The jury found for plaintiff under an instruction permitting a recovery on the fourth count on the theory that the defendants stole the certificates. The majority of the court *held* this was error, because the nucleus of the cause of action stated in the fourth count was the charge that the certificate was won in a game of poker. Cox, J., *dissents*, and *holds* that the cause of action was the wrongful taking of the certificate, and that there was no material variance between the pleading and the proof as to the manner in which it was obtained, and

*holds further* that the allegations in the fifth count were sufficient to authorize a recovery on the larceny theory, and that the instruction authorizing a recovery on the fourth instead of on the fifth count was at most a clerical and immaterial error.

15. GAMBLING: Recovery of Losses: Common Law. Section 3424, Revised Statutes 1899, which provides, "That any person who shall lose money or property at any game or gambling device, may recover the same by civil action," is an innovation upon the common law which permitted a recovery only where the winning party made drunk or drugged his victim for the purpose of getting his property in a gambling game.

16. PLEADING: Proof. The proof and allegations must correspond and no recovery can be had on a cause of action not stated in the pleading.

17. ———: Doubtful Allegations: Construction. The court in construing a pleading should consider what the adversary to the pleader had the right to understand from the pleading, in order to secure him from being misled.

18. PRACTICE: Trying Case on Theory Not Pleaded: Estoppel. Where defendants demurs to the evidence and objects to instructions on the ground that the allegations in the petition are not proven, and introduces no evidence tending to controvert plaintiff's evidence which covers a cause of action not pleaded and on which a recovery was permitted, it cannot be said that defendants are estopped or bound by the theory on which the case was tried in the lower court.

Writ of Error to the Jasper Circuit Court.—*Hon. Haywood Scott,* Judge.

REVERSED AND REMANDED (*and certified to Supreme Court*).

*M. R. Lively* for plaintiffs in error.

(1) A general demurrer is good at any stage of the cause of action. Hyatt v. Association, 106 Mo. App. 610. (2) If the petition contains two causes of action which are of such character that they cannot legally be joined in one petition, demurrer is the proper pleading to reach the irregularity. Lane v. Dowd, 172 Mo. 167; Williams Co. v. Bolivar, 122 Mo. App. 450.

(3) A conspiracy is a combination by two or more persons to do a thing criminal or unlawful in itself. State v. Kennedy, 177 Mo. 98. (4) The instructions must be based on the pleadings. Chadwick v. Transit Co., 195 Mo. 526. (5) An instruction which enlarges the issues is erroneous. Hamphill v. Kansas City, 100 Mo. App. 563; Heinzle v. Railway, 182 Mo. 528. (6) The plaintiff is entitled to recover only one damage. If he is entitled to interest as a measure of damages, then he is not entitled to punitive damages also. Where interest is allowed on conversion, punitive damages are not also allowed. Morley v. St. Joseph, 112 Mo. App. 671; Arnold v. Sedalia National Bank, 100 Mo. App. 474; Hoffman v. Gill, 102 Mo. App. 320; Eckenwroth v. Transit Co., 102 Mo. App. 597.

*H. W. Currey, George V. Farris* and *W. J. Owen* for defendant in error.

(1) The findings of the jury were, by express mention, on the second and fourth counts in the petition, and, hence, the first, third, fifth, sixth and seventh counts are not before the court, and it is wholly immaterial what the averments in these counts were. Hoyle v. Farquharson, 80 Mo. 378; Downing v. Railway, 70 Mo. App. 662. (2) Having answered and gone to the trial after their demurrer to the petition was overruled, only two objections are now available to them: First, the objection that the petition does not state facts sufficient to constitute any cause of action; and, second, that the court has no jurisdiction over the subject-matter. Hudson v. Cahoon, 193 Mo. 558. (3) The evidence supported the allegations, and punitive damages were properly allowed. 28 Am. and Eng. Ency. Law (2 Ed.), 732; Jackson v. Poteet, 89 S. W. 980; Downing v. Outerbridge, 79 Fed. 931; Mill Co. v. Langford, 115 S. W. (Tex.) 89; Reamer v. Morrison Exp. Co., 93 Mo. App. 512; Blackmer v. Railroad, 101 Mo. 557; Gardner v. Railroad, 117 Mo. App. 147; Hayes v. Railroad, 53

S. E. 847; Favorite v. Cottrill, 62 Mo. App. 123; Carson v. Smith, 133 Mo. 606. (4) The admission of Keller's deposition to impeach him was not error. Tennent Shoe Co. v. Birdseye, 105 Mo. App. 696; Commonwealth v. Smith, 40 N. E. (Ill.) 196; 7 Ency. of Evidence, 150; In re DeGottardi, 114 Fed. 328; Railroad v. Faisst, 68 Ark. 587, 61 S. W. 374. (5) The defendants by cross-examination of the plaintiff sought to show that he was a gambler, had been arrested and prosecuted for crime, had visited bawdy houses and that he had lied about this transaction, that he had made statements out of court contrary to statements on the stand, and was generally immoral. This attack justified the evidence showing plaintiff's good character. Walker v. Ins. Co., 62 Mo. App. 209; Berryman v. Cox, 73 Mo. App. 67; Browning v. Railroad, 118 Mo. App. 459. (6) Fetters is shown by the evidence to have taken plaintiff to Keller's saloon; to have joined with Keller in a poker game; to have been present with Keller and plaintiff all the time at the Keller saloon; to have come back to Webb City with plaintiff and paid his way on the street car, and the following morning presented one of the stolen drafts for payment. This warranted the submission of a question of a conspiracy between the two defendants to steal plaintiff's drafts, to the jury; and, also justified the finding. Lesser v. Bockhoff, 33 Mo. App. 223; Allred v. Bray, 41 Mo. 484; Martin v. State, 8 So. Rep. (La.) 23; De Donato v. Morrison, 160 Mo. 591; Canifax v. Chapman, 7 Mo. 175; McNannus v. Lee, 43 Mo. 206; Cooper v. Johnson, 81 Mo. 490; State v. Walker, 98 Mo. 104; Goins v. State, 21 N. E. 476; Kelley v. People, 55 N. Y. 565; People v. Van Tassel, 156 N. Y. 561; Spies v. People, 12 N. E. 865. (7) In civil cases charging a conspiracy it is only necessary to prove facts from which an inference of a conspiracy may be drawn. Riehl v. Association, 3 N. E. (Ind.) 635; Indianapolis Co. v. Collingswood, 71 Ind. 476; Evansville Co. v. Mosier, 101 Ind. 597, 1 N. E. 197.

NIXON, P. J.—Defendant in error brought suit against plaintiff in error in the circuit court of Jasper county to recover the value of two certificates of deposit —one of $500 and the other for $300—and for exemplary or punitive damages for the manner in which the plaintiffs in error, as he charged, had secured possession of the certificates of deposit.

The first three counts of the petition relates to the certificate of deposit for $500, issued by the Webb City Bank, and the three counts are drawn for the same cause of action, but to present different theories of the case. Counts four, five and six relate to the certificate of deposit for $300, issued by the First National Bank of Carterville, and are for the same cause of action, presenting different theories of the case by the plaintiff. Count seven relates to a certificate of deposit for $200, and on this count, the jury, by a peremptory instruction of the court, returned a verdict for defendants, and it is now eliminated. Trial was had by jury, and a verdict returned in favor of plaintiff on count two in the petition for $507.50 actual damages, and $937.50 as exemplary damages, and found for the plaintiff on the fourth count for actual damages in the sum of $314.50, and exemplary damages in the sum of $562.50. Defendant thereupon sued out of the Kansas City Court of Appeals a writ of error, and the cause was subsequently transferred to this court wherein briefs were filed and the cause was argued and submitted, GRAY, J., not sitting. An opinion affirming the judgment was rendered, whereupon a petition for a rehearing was filed, and the two judges, having disagreed as to whether a rehearing should be granted, by consent, W. R. Self was qualified as special judge, and, upon hearing, the motion for rehearing was sustained.

Before the trial was had in the circuit court, defendants filed a demurrer to plaintiff's petition which was overruled, and they now insist that the court committed error in that respect. The record shows, how-

ever, that after the demurrer was overruled defendants answered, and this being true, they have waived any rights they may have had under the demurrer.

They insist in this court, however, that the petition does not state facts sufficient to support the verdict; and in this connection it might be well enough to note that counts one, two and three all refer to the same cause of action, and as a verdict was rendered on count two alone the other two are not before us for review. Counts four, five and six relate to the same cause of action, and as a verdict was returned on count four, counts five and six are not before us. Count four which is now brought under review on the objection that it is insufficient to sustain the verdict is as follows:

"The plaintiff, for another and further cause of action against the defendants, states: That on the —— day of February, 1908, he was the lawful owner and had the lawful possession of a certificate of deposit, dated September 8, 1905, issued by the First National Bank of Carterville, to him, by the terms of which said certificate the said First National Bank of Carterville, by reason, and in consideration of $300 to it paid by the said plaintiff, promised to pay to the plaintiff, or his order, on the return of said certificate, the said sum of $300; that said certificate of deposit was of the actual value of $300; that on the said —— day of February, 1908, and prior thereto, the plaintiff was afflicted with a habit or disease of intoxication; that by reason thereof the plaintiff by taking one drink of intoxicating liquor became unable to control a desire to continue drinking intoxicating liquors, and after drinking intoxicating liquor lost his discretion and power to control himself, and these facts were well known to the defendants, and the said defendants, on and prior to said date, unlawfully and maliciously intending to injure the plaintiff by wrongfully getting his property, conspired and confederated together to obtain the said certificate of deposit and to cash the same at the First National Bank of

Carterville, and thereby wrongfully and maliciously deprive the plaintiff of said sum of $300 and maliciously convert the same to their own use.

"Plaintiff says that on the said —— day of February, in pursuance of said conspiracy, the defendants intentionally and maliciously induced plaintiff to drink what plaintiff thought was whiskey, an intoxicating liquor, and which was either intoxicating liquor or poison, and after plaintiff had, at the solicitation of defendants, so drunk said intoxicating mixture, the defendants maliciously induced plaintiff to enter into what they termed a game of poker at the defendant, Keller's saloon at Duenweg, Missouri, and pursuant to said conspiracy, and in said game and by said gambling device, said defendants wrongfully and maliciously obtained from the plaintiff in manner unlawful and without any consideration therefor the said certificate of deposit and in pursuance of said conspiracy on the —— day of February, 1908, being the first after they had obtained the said certificate, wrongfully and maliciously endorsed and surrendered the same to the said First National Bank of Carterville, and the said bank paid to the said Keller the said sum of $300, and the said Keller then and there unlawfully, intentionally and maliciously converted the said $300 to his own use, and thereby said defendants, on account of said malicious and unlawful conversion of his said certificate of deposit damaged the plaintiff in the actual sum of $300.    And that plaintiff by this suit seeks to recover $2000 as exemplary or punitive damages.

"Wherefore, plaintiff prays judgment against the defendants for the sum of $300 as his actual damages, together with six per cent from the date of said conversion, and the further sum of $2000 as his exemplary or punitive damages and for costs of suit."

Count two on which the other part of the verdict rested is substantially the same as count four.   It, however, makes no allusion to the poker game or that the

certificate was obtained "in said game and by said gambling device."

We think as against the objection that the petition (as to the second count) is insufficient to support the verdict, that this petition is good. There can be no question but that it is good as to the charge of wrongfully securing the certificate of deposit and getting it cashed, which would entitle the plaintiff, Summers, to a verdict for the actual damages, to-wit, the amount of the check. The only question which could be raised upon the second count of the petition at all is as to whether it states facts sufficient to warrant the assessment of exemplary damages. Charge is made here that these two persons had conspired and confederated together for the very purpose of securing this certificate of deposit from this plaintiff and converting it into money and thereby depriving him of it, and if this were true, and they carried out their scheme as it is alleged they did, the parties would have practically been guilty of larceny, so that the principle involved in this case is the same as if a direct charge of larceny had been made. We understand the rule to be in this state that before exemplary damages can be awarded, the act complained of must be unlawful, and accompanied by an intentional wrong. [Goetz v. Ambs, 27 Mo. 26; Carson v. Smith, 133 Mo. 606, 34 S. W. 855; State v. Jungling, 116 Mo. 162, 22 S. W. 688; Ickenroth v. Transit Co., 102 Mo. App. l. c. 666, 77 S. W. 162; Gardner v. Railroad, 117 Mo. App. 138, 93 S. W. 917; Blackmer v. Railway Co., 101 Mo. App. 557, 73 S. W. 913; Reamer v. Morrison Express Co., 93 Mo. App. 501, 67 S. W. 718; Gildersleeve v. Overstaltz, 90 Mo. App. 532.]

The policy of the law which authorizes the assessment of punitive damages in any case rests upon the idea that the wrongdoer deserves some punishment in addition to being required to make restitution, and to justify the award of such damages two things must occur: (1) The act complained of must be wrong and

some actual damage result therefrom. (2) The wrong-doer must have known that his act was wrong, and he must have done it intending at the time to inflict injury thereby, or it must have been done under such circumstances that the law will imply the evil intent.

In all cases of larceny the knowledge that the act is wrong and the intent to injure by depriving the owner of his property must exist, for, without these elements, there can be no larceny, but when these elements concur, and the property is taken by the wrongdoer and converted to his own use, no reason can be assigned why exemplary damages may not be awarded. It will not do to say that the plaintiff will be fully compensated by payment to him of the value of his property for if that principle were to govern exemplary damages would be eliminated. The authorities all agree that exemplary damages cannot be awarded unless actual damages are also suffered, but actual damages must be susceptible of ascertainment and susceptible of being measured by some legal standard to authorize recovery therefor.

Neither will it do to say that the offender can be punished by the enforcement of the criminal laws of the state, for which the enforcement of the criminal law the court has no concern in the trial of a civil action for damages, and whatever punishment may be assessed through the medium of exemplary damages in a civil action goes to the plaintiff in the suit and not to the state.

There are, however, respectable authorities which hold that if the act is a crime, punitive damages cannot be assessed. Also, in cases of tort, if the actual damages can be accurately measured, as, for instance, by assessing the value of the property injured, destroyed or converted, that the actual value furnishes the entire measure of damages, and that exemplary damages cannot be awarded in such case, but as we understand the principles underlying the rule which authorizes the assessment of exemplary damages we do not think either the fact that the act complained of is a crime, or the

further fact that the value of the property, injured, de-stroyed or converted can be accurately ascertained, will prevent the assessment of punitive damages. What-ever the rule may be in other jurisdictions, the author-ities above cited seemed to us to establish the rule in this state to be as above outlined, and our conclusion is that the facts pleaded in this case warranted the as-sessment of punitive damages.

It is contended that the damages assessed are exces-sive as to the finding on the second count of the petition. The award of exemplary damages never goes as a matter of right, but is discretionary with the jury in all cases, and the amount to be assessed when awarded is also discretionary. In assessing such damages, the jury should consider the aggravating and mitigating circum-stances, and may refuse to award any exemplary dam-ages; but if, in their judgment, such damages should be given, then the amount thereof is left to their discre-tion, subject, however, to the approval of the court, and if, in the judgment of the court, the damages awarded are too much, a remittitur may be required or a new trial awarded. If it be true, as plaintiff's evidence tends to prove, that this plaintiff was induced by the defendant Fetters to go with him to another town and plaintiff was there kept intoxicated by these defend-ants until he became unable to protect himself, and they then took advantage of his condition and stole from him drafts to the value of $800, we are not prepared to say that the assessment of $1500 additional as punish-ment for the wrong perpetrated under such circum-stances was excessive.

It is contended by plaintiffs in error that there was a misjoinder of causes in this case. As to this objection it is sufficient to say that defendants demurred to the petition and their demurrer was overruled, whereupon they answered and have therefore waived this question as they did all others that were raised by the demur-rer. The only questions that can be raised after verdict

by general objection to the sufficiency of the petition are that the petition wholly fails to state a cause of action, and that the court did not have jurisdiction of the subject-matter of the suit. [Hudson v. Cahoon, 193 Mo. 547, 558, 91 S. W. 72; Hubbard v. Slavens, 218 Mo. 598, 617, 117 S. W. 1104.]

It is also contended that the court committed error in permitting the plaintiff to introduce witnesses to show his good reputation for truth and veracity and general honesty. The basis for this testimony was the fact that at the trial defendants had sought to show that plaintiff was a gambler, had been arrested and prosecuted for crime, and that he had made statements out of court contrary to statements on the witness stand. This attack upon the veracity of plaintiff justified the evidence complained of. [Browning v. Railway Co., 118 Mo. App. 449, 459, 94 S. W. 315.]

Before trial Keller's deposition was taken and he refused to answer questions touching the manner of his receiving the drafts in controversy on the ground that his answer might form the basis of a criminal prosecution against him. At the trial Keller testified that he had cashed the drafts as a matter of accommodation to plaintiff; that he received the drafts from plaintiff in that way, and testified fully as to what occurred between him and plaintiff, and, in rebuttal, the deposition which had been previously taken, and in which he had refused to tell how he had secured the drafts for the reason that it might subject him to a criminal prosecution, was offered for the purpose of contradicting the testimony which he had given in this trial. No error was committed in this respect. [Tennent Shoe Co. v. Birdseye, 105 Mo. App. l. c. 702, 78 S. W. 1036.]

It is next contended that a demurrer to the testimony should have been sustained for the reason that there is no evidence on which the jury would be warranted in finding that a conspiracy existed between these parties. An examination of this testimony dis-

closes that the evidence offered by plaintiff tends to show the following state of facts: That plaintiff met defendant, Fetters, in Webb City, and that they two had some drinks together and plaintiff became intoxicated and exhibited to Fetters the certificates of deposit. Shortly afterwards Fetters suggested to plaintiff that they go to Duenweg stating that he wanted to see Keller, and asked plaintiff to accompany him. He did so, and after they arrived at Duenweg, they spent several hours in a saloon drinking, when plaintiff and the two defendants repaired to another room known as the poker room and there engaged in a game of poker at which plaintiff lost what loose change he had in his pockets, to the amount of some five dollars. Further, that during the progress of the game, plaintiff took off his coat, in the pockets of which the certificates were, and hung it up, and that when the game was broken up, and they came back into the saloon, Keller had these certificates of deposit in his possession and tried to get plaintiff to endorse them, but he refused, and he and Keller had some words over this matter. That plaintiff at this time, as he testified, was very drunk and could not remember distinctly all that occurred, but that he and Fetters then took the car and came back to Webb City and went to another saloon where plaintiff and Fetters spent the night, and that on the next day plaintiff in company with a friend of his went back to Duenweg to see Keller about the certificates of deposit, and at that time plaintiff charged Keller with having obtained them wrongfully and Keller contended that he had won them from plaintiff. The evidence further shows that Keller cashed both of these certificates of deposit.

The defendant, Fetters, though present at the trial, did no testify in the case. Plaintiff had testified that Fetters had induced him to go to Duenweg, got him drunk and engaged with him in a game of poker with Keller, and afterwards these certificates turned up in the hands of Keller, and that Keller afterwards cashed

them. When it had been charged, and some evidence introduced tending to show that these checks had been wrongfully obtained by Keller and that Fetters was a party to it, the fact that he remains mute and makes no explanation of his conduct upon that occasion is a strong circumstance indicating that he was implicated in the wrong that was perpetrated. [Baldwin v. Whitcomb, 71 Mo. 651; Connecticut Mut. Life Ins. Co. v. Smith, 117 Mo. 261, 294, 22 S. W. 623; Stephenson v. Kilpatrick, 166 Mo. 262, 269, 65 S. W. 773; Nelson v. Hall, 104 Mo. App. 466, 473, 79 S. W. 500; Long v. Nute, 123 Mo. App. 209, 100 S. W. 511.]

To our mind this evidence was ample to submit to the jury under the second count the question of a conspiracy, or, in any event, the question as to whether defendants acted jointly in the wrongful purpose to secure these certificates of deposit from plaintiff and deprive him thereof. This was all that was required. Even though there had been no previous understanding or agreement between defendants that they would inveigle plaintiff into a game of poker while he was intoxicated and steal from him these certificates of deposit, we think that if as a matter of fact, they did co-operate in accomplishing this purpose they were jointly liable, and this contention must be ruled against the plaintiffs in error.

Contention is also made that error was committed in the instructions given by the court. There were ten given on behalf of the plaintiff, seven on behalf of defendants, and thirteen others asked by defendants were refused. These instructions are too long to be incorporated in this opinion, but we have gone over them carefully and in their general scope they follow the allegations of the petition and the evidence, and place the burden of proof upon the plaintiff, and also tell the jury that the question of allowing exemplary damages was one that is discretionary with them, and that they could not be allowed unless the act complained of was an in-

tentional wrong. As was intimated these instructions follow the correct theory of law, and as there was substantial evidence upon which to submit them to the jury, and they have found for the plaintiff, the verdict should not be disturbed.

Complaint is also made that the court erred in not granting a new trial by reason of alleged newly discovered evidence on the part of defendants. We find attached to the motion for a new trial the affidavit of a witness that he knew certain facts which would have been material had they been offered at the time of the trial, but there is an entire absence of any showing that defendants had used any diligence to discover these facts, or that they might not have proven the same facts by other witnesses; hence, there was no error in overruling the motion on that ground.

In attacking the judgment on the fourth count the defendants contend that the demurrer to the testimony should have been sustained as to it and that instruction No. 2 was erroneous. In support of the contention that the demurrer to the evidence should have been sustained as to the fourth count it is insisted that this count charges that the certificates of deposit were lost in a game of poker, and that the proof does not sustain that charge. The portion of the petition upon which this contention is based is as follows (after charging a conspiracy on the part of defendants to wrongfully secure his property).

"In pursuance of said conspiracy, the defendants intentionally and maliciously induced plaintiff to drink what plaintiff thought was whiskey, an intoxicating liquor, and which was either intoxicating liquor or poison, and after plaintiff had, at the solicitation of defendants, so drunk said intoxicating mixture, the defendants maliciously induced plaintiff to enter into what they termed a game of poker at the defendant, Keller's saloon at Duenweg, Missouri, and pursuant to said conspiracy, and in said game and by said gambling device, said de-

fendants wrongfully and maliciously obtained from the plaintiff in a manner unlawful and without any consideration therefor, the said certificates of deposit."

Defendants' right to a reversal of the judgment on the fourth count of the petition in this case depends upon the determination of what cause of action is stated by the plaintiff in said count. The trial court gave an instruction for plaintiff—No. 2—which specifically authorized him to recover if the jury should find that the $300 certificate of deposit was stolen from him. If the cause of action stated in the fourth count is that the certificate of deposit was larcenously taken and appropriated, then there was no material error; if, on the contrary, the cause of action therein stated is that the $300 certificate of deposit was obtained at a game of poker by the defendants, by a gambling device, then material error was committed by the trial court. If, as a matter of fact, this count of the petition charges that the money was lost at a game of poker, of course it could be recovered under section 3424, Revised Statutes 1899, which provides that "any person who shall lose money or property at any game or gambling device may recover the same by civil action." This statute was an innovation upon the common law which was that parties engaged in such a game of chance stood in *pari delicti,* and money or property lost in such game and paid over could not be recovered from the winner. It was also held at common law that if one of the parties to the game was made drunk or stupefied by the other drugging him with poison or whiskey so that he became unconscious, and if while in that condition he was deprived of his money or property by the other, a recovery of the property could be had, more especially if the further allegation was made that the drugs were administered for that purpose.

By examining the fourth count of the petition, it is apparent that it contains much prefatory matter.

The principal purpose of this seems to be to show that the liability of the defendants was joint; but as the conspiracy is charged to have been subsequently consummated, the nucleus of the cause of action centers in the manner in which it is charged that the defendants actually obtained the certificate of deposit. It is apparent that the petition does not charge that such certificate was obtained by means of fraud or trick with intent to steal. The essential charge found in this fourth count of the petition is that the defendants "induced plaintiff to drink what plaintiff thought was whiskey, an intoxicating liquor, and which was either intoxicating liquor or poison, and after plaintiff had, at the solicitation of defendants, so drunk said intoxicating mixture, the defendants maliciously induced plaintiff to enter into what they termed a game of poker, . . . . and pursuant to said conspiracy, and in said game and by said gambling device, said defendants wrongfully and maliciously obtained from the plaintiff, in a manner unlawful, and without any consideration therefor, the said certificate of deposit." · A critical examination of these allegations leads to the conclusion that the pleader intended to charge that the property of the plaintiff was bet on or lost at a game of poker. While it is charged that the certificate was obtained without any consideration, such allegation could be well made as to property lost by betting on a game of chance. It is further to be observed that it is not charged that at the time this property was lost in this game of poker that the plaintiff did not voluntarily enter into said game, nor that he was so drunk that he was not fully conscious of and responsible for his conduct. It will also be seen that the pleader was using apt and proper terms to describe the manner in which his property was lost by gaming and does specifically charge that the property was lost at a game of poker and by a gambling device.

The allegations of the petition are clearly within the language of section 3424, Revised Statutes 1899, and

the statute authorizes the recovery of money lost at gaming. Not only does the pleader use proper language to describe the loss of his property by a gambling device, but he has wholly failed to use any apt or proper terms to describe a larcenous taking, or in any way to distinguish the taking otherwise than by a gambling device. Turning now to the instruction (No. 2) given by the trial court, it will be seen that it authorizes a recovery by the plaintiff if the jury shall find that "while the plaintiff was drunk, the said defendants engaged with the plaintiff in a game of poker, and while so engaged the said defendants got the certificate of deposit from the plaintiff without giving any consideration therefor and got the said certificate of deposit without the knowledge or consent of the plaintiff," then they were guilty of larceny and a recovery could be had and punitive damages awarded. It will be seen from this that the court submitted the issues to the jury as to this count on the theory that the cause of action stated in the petition was that the defendants had stolen the certificate of deposit from plaintiff while he was engaged in playing a game of poker, and did not submit any issue that they obtained the property by a game of chance and by a gambling device. There was no evidence at the trial that would have sustained a recovery on the theory that the defendants obtained this certificate in a game of poker by a gambling device.

The plaintiff testified that he did not bet the certificate of deposit in a game of poker, and that he exhibited neither of the certificates during the time he was engaged in such a game. It is to be further observed that the instruction given by the court would have been a proper one under proper issues, the objection to it being that it allows a recovery on a cause of action not stated in the fourth count of the petition. It has been often stated that in the trial of civil cases a fundamental rule of practice is that the office of pleading is to formulate issues; and while rules of practice require

that pleadings should be liberally construed, they do not authorize the trial court or any court to import into the pleadings facts they do not contain. Nor can it be said that the statutory rules of pleading are shadows; they are substance indeed, and unless duly observed, legal trials degenerate hopelessly into mere squabbles. In its desire to distinguish between form and substance, section 676, Revised Statutes 1899, requires the court to be equally careful to afford known, fixed and certain requisitions, in place of the discretion of the court or judge thereof. [Hart v. Harrison Wire Co., 91 Mo. 414, 421, 4 S. W. 123.] Our code contemplates that a cause of action should be stated in a plain and concise way, setting forth the facts constituting the ground for relief and the material facts not stated in the pleading cannot be proven; that the proof and allegations must correspond, and that no recovery can be had on a cause of action not stated in the pleading. Courts cannot sanction a departure from these cardinal principles. The rule is also well established that the court in construing a pleading should consider what the adversary to the pleader had the right to understand from the pleading, in order to secure him from being misled. The plaintiff had no right to throw on his adversaries the hazzard of correctly interpreting the pleading which contained doubtful allegations, upon one or the other of which such adversaries might act. [Missouri Pac. Ry. Co. v. Bank, 212 Mo. 505, 111 S. W. 574; Thompson v. Keyes-Marshall Brothers Livery Co., 214 Mo. 487, 113 S. W. 1128; Sharp v. Railroad, 213 Mo. 517, 111 S. W. 1154.]

The rule applied to this case is that the plaintiff has pleaded one cause of action, and the court by its instructions has allowed him to recover on another cause of action. This was error. [Mark v. Williams Cooperage Co., 204 Mo. 242, 103 S. W. 20; Henry County v. Citizens' Bank, 208 Mo. 209, 106 S. W. 622.]

Nor do we find any reason in this case why the defendants are in any way bound by the theory on which the case was tried *nisi.* Such estoppel does not exist for the reason that the defendants introduced no evidence to controvert this count of the petition. The evidence introduced was competent because relevant to other counts in the petition. Besides this the defendants made the objections that the law allows to the theory on which the court tried the case *nisi,* both by demurrer to the evidence and by objecting to the instructions given by the court, and, having done all that was possible to protect their rights at the trial, they should not now be denied a hearing on account of any waiver.

We hold that instruction No. 2, broadening the issues made by the pleadings and allowing a recovery for larceny, was material error.

Further, under the evidence and pleadings in this case, the plaintiff was not free from turpitude. Instead of shunning temptation, he sought it; he voluntarily entered a saloon and gambling den in order to gratify his passion for drink and his criminal passion for gambling. While the damages in this case against defendants are large, they are not excessive if the issue of grand larceny properly presented under the rules and statutes of pleading and practice; but no matter how righteous the verdict, the defendants have a right to demand that they should not be charged with obtaining property by a gambling device, and then found guilty of larceny. Such a proceeding is in the very teeth of section 798 of our statutes which provides that "where the allegation of a cause of action or defense to which the proof is directed is unproved, not only in some particular or particulars only, but in the entire scope and meaning, it shall not be deemed a case of variance, but a failure of proof.

For these reasons the judgment as to the fourth count for the sum of $314.50 actual damages and $562.50 as punitive damages is reversed and the cause

remanded, and the judgment as to the second count is affirmed. *Self,* Special Judge, concurs; *Cox, J.,* dissents as to that part of the opinion reversing the judgment and remanding the cause on the fourth count of the petition; and requests that the cause be certified to the Supreme Court, and it is so ordered. *Gray, J.,* not sitting.

## DISSENTING OPINION.

Cox, J.—I cannot concur in reversing that part of the judgment in this case based upon the finding of the jury upon the fourth count, but think that the judgment should be affirmed *in toto.* I do not agree with my brethren that the words "in said game and by said gambling device" used in the fourth count of the petition state the "nucleus" of plaintiff's cause of action as to the three hundred dollars' certificate, and precludes all proof of the manner in which the certificate was obtained except that it was won as a wager in the game of poker. As I view it the "nucleus" of the cause of action was the fact that defendants conspired together to obtain this certificate of deposit wrongfully and without consideration', and that they did so obtain it. If I am right in this then it is clear that the cause of action alleged could be proven without proving that the property was obtained by winning it at a game of poker. If by the use of the words "in said game and by said gambling device" in the petition, defendants understood that they would only be required to meet proof that the property was won at a game of poker, and they were in any way misled or injured by proof that the certificate was stolen from plaintiff's pocket, this could, at most, have been but a variance between the pleading and the proof which defendants could only take advantage of as provided by the statute and did not amount to a failure of proof.

The issue between the parties on the facts·was whether the certificates were stolen from plaintiff's pocket, as plaintiff's testimony tended to prove, or whether Keller paid cash for them as testified to by him. Both certificates were kept together in plaintiff's pocket; were both taken at the same time and in the same manner; hence, defendants could not have been misled by any technical difference in the pleading relating to the two certificates. If there was any error in that particular it was purely a technical one which did not and could not result in any injury to defendants.

If the position of the majority is correct on this point in this case then if a party should sue to recover money taken from him by a robber, and should allege that the robber met him on the highway, threw him down and tied him, then took the money from his pocket, and the proof should show that instead of obtaining the money in that way the robber held him up at the point of a pistol and required him to hand the money over, this would be a failure of proof, and it would be no more ludicrous to hold in that case that the "nucleus" of the cause of action was the charge that the robber threw him down and tied him than to hold in this case, as the majority have done, that the "nucleus" of the cause of action is the charge that the property was won in a game of poker. To my mind such a position is absurd. The cause of action in either case is obtaining the property wrongfully and to hold that a variance between the pleading and the proof as to the manner in which it was obtained is fatal in the absence of any showing that the defendants were misled, or in any way injured, is, in my opinion, in violation of the plain provisions of our statute relating to variance, sections 1846 and 1847, Revised Statutes 1909, and is giving to a bare technicality a force unwarranted, and compels the court to become an instrument to assist the wrongdoer.

·The reversal as to the fourth count is wrong for another reason. Counts four and five both relate to the same certificate of deposit; the charge in count five is that the certificate was larcenously obtained. The instruction under which the jury found for plaintiff on the fourth count, and which is condemned by the majority opinion followed the allegation of the fifth count, but, in closing, told the jury that if they found the facts therein described to be true to return a verdict on the fourth count. This was a mere clerical error. The plaintiff, on the facts found, was entitled to a verdict on the fifth count. It has been uniformly held that when two or more counts refer to the same cause of action a general verdict, without specifying which count it is based on, is good. [Clemens v. Collins, 12 Mo. 604; Brady v. Connolly et al., 52 Mo. 19; Owens v. Railroad, 58 Mo. 386; Lancaster v. Insurance Co., 92 Mo. 460, 5 S. W. 23; Nolan v. Bedford, 89 Mo. App. 172; Akers v. Ray County Savings Bank, 63 Mo. App. 316; McGuire v. Transit Co., 103 Mo. App. 479, 78 S. W. 838; Shearer & Martin v. Hill, 125 Mo. App. 375, 102 S. W. 673.]

The reason of the rule is that the jury have nothing to do with the various counts. The purpose which these counts serve in a trial is to frame issues to be supported by testimony and then submitted to the jury by instructions. The court, in the instructions, tells the jury what facts must be found to be true in order to find for plaintiff or defendant as the case may be, and when the jury returns a verdict such a verdict is the finding of the jury on the issues of fact submitted to them by the instructions, and when the verdict and the instructions together show what facts the jury found, then it is the duty of the court to enter such judgment as the facts found require if there is any count in the petition that is sufficient to support it. Applying this rule to this case there can be no escape from the conclusion that the instruction properly submitted to the jury the is-

sues of fact raised under the fifth count of the petition, and since the jury has fairly passed upon these issues the plaintiff is now entitled to the fruits of his verdict, and ought not to be deprived of it by a mere clerical error in directing the jury to return their verdict on the fourth count when it should have directed it to be returned on the fifth count, or to be returned generally. The jury, by their verdict, found as a fact that the defendants stole the three hundred dollars certificate just as they found that they had stolen the five hundred dollars certificate. If the fourth count did not warrant the submission of that issue to the jury the fifth count did, and had the instruction merely directed a verdict for plaintiff as to the three hundred dollars certificate upon the finding of the facts in his favor, and said nothing as to which count in the petition it was to be based upon, there can be no question that it would be good under the authorities above cited, and I can see no distinction between omitting all reference to counts by number and inserting the wrong number when only one issue of fact is to be determined and no injury results from the error.

The sole duty of the jury is to pass upon the issues of fact, and the sole purpose of the instructions is to define to the jury what issues of fact they are to pass upon, and to give them such information as will guide them to a correct conclusion upon those issues. When this has been done, and a conclusion of the jury upon the issues of fact has been correctly reached, and this is disclosed by their verdict, then both the instructions and the verdict have served their purpose. The entering of the proper judgment is a duty devolving upon the court. In the performance of that duty the court should look to the instructions and the verdict to ascertain what facts have been found and when that is determined then the duty to enter such judgment as the facts found require, under the pleadings, is imperative, and any technical defect, clerical error, or mis-

take, in the instructions that could not, and did not, affect the jury in passing upon issues of fact should be disregarded. Any statement in the verdict beyond a proper finding of the facts should be regarded as surplusage, and the proper judgment entered upon the real finding. [Ranney v. Bader, 48 Mo. 539; State ex rel. Webster v. Knight, 46 Mo. 83; Hancock v. Buckley, 18 Mo. App. 459; Gurley et al. v. O'Dwyer, 61 Mo. App. 348; Mueller v. St. Louis Hospital Association, 73 Mo. 242; Buttron v. Bidell, 228 Mo. 622.] What difference can it make whether the surplusage in the verdict was placed there by direction of the court or was placed there by the jury of their own initiative?

Under the opinion of the majority a retrial may be had on the same pleadings and the same evidence and the same instructions, except that the word fourth should be erased in the instruction and the word fifth inserted, and then if the same verdict is returned it will stand. To send this case back for a new trial for such a reason is to my mind judicial folly. Cases should not be reversed though error be committed unless such error operated to the prejudice of appellant on the trial of the case upon its merits. [Statute 1909, sec. 2082; School District v. Holmes, 53 Mo. App. 487; Bradford v. Floyd, 80 Mo. 207, 209; Boggess v. Street Railway, 118 Mo. 328, 23 S. W. 159; Gardner v. Railroad, 135 Mo. 90, 100, 36 S. W. 214; Cartwright v. Culver, 74 Mo. 129; Foster v. The Railroad, 115 Mo. 165, 21 S. W. 916.] The writer of the majority opinion has not noticed this point because the attorney for the defendant in error has not called our attention to it in his brief. If the point were being made by plaintiff in error we could well refuse to consider it if the record should show that the trial court's attention was not called to it, but the position that an appellate court will not consider a point fairly appearing upon the record in that court, merely because counsel has overlooked it in his brief cannot be justified from any point of view. The books are full

of cases affirmed or reversed upon points in the record but not mentioned in the briefs. The business of the courts is to administer justice between litigants and not to sit as mere arbiters in a technical legal battle between lawyers.

The trial court seems to have taken the view that it was immaterial as to which count was mentioned in the verdict of the jury for a judgment was entered for the total amount found by the jury as to both certificates of deposit.

It cannot be said in this case that any error that may have been committed operated to the prejudice of the plaintiffs in error upon the merits of their case. The issues of fact were, in my judgment, fairly submitted to the jury and to reverse that part of this judgment upon a bare technicality, as is done by the opinion of the majority, is in my judgment in violation of section 2082, Revised Statutes 1909, which forbids us to reverse a case unless it appears that error was committed which materially affected the merits of the action, and is also in direct conflict with Cartwright v. Culver, 74 Mo. 179, where, in commenting upon the policy of reversing a case and sending it back for a new trial where the error worked no substantial injury this language was used: "If the verdict and judgment were in every other respect warranted and the cause were for such an error as is here complained of remanded what substantial benefit could the defendant have derived from a reversal of the judgment? To reverse a judgment for such an error would be to disregard section 3775 of the statute which reads as follows:

" 'The Supreme Court shall not reverse a judgment of any court unless it shall believe that error was committed by such court against the appellant, or plaintiff in error, and materially affecting the merits of the action.' "

And also in direct conflict with Foster v. Railroad, supra, wherein it is said: "Error cannot generally be

predicated on the action of the trial judge in calling for a finding by instruction upon some immaterial fact where the substantial facts essential to plaintiff's cause are duly submitted and found. Such an error should be disregarded when (as here) it plainly appears to have had no prejudicial bearing upon the substantial rights of the adverse party upon the merits of the case."

For the reasons above cited I request that this case be certified to the Supreme Court.